**376 A.2d 712.**

Reginald B. Taylor *et al. vs.* Joseph F. Marshall *et al.*

AUGUST 15, 1977.

Present: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. The plaintiffs brought this petition for declaratory judgment pursuant to the provisions of G.L. 1956 (1969 Reenactment) ch. 30 of title 9, our Uniform Declaratory Judgments Act. They request a declaration by the Superior Court that (1) the proposed sale and conveyance of a certain parcel of real estate is not a "subdivision" as defined either in G.L. 1956 (1970 Reenactment) §45-23-1, or under the rules and regulations of the Planning Board of the Town of Portsmouth and particularly section II, subsection 2-1 thereof; (2) that Glen Farm Road, a private right-of-way, is a "street" within the meaning of §45-23-1, as well as within the meaning of the rules and regulations of said planning board, particularly subsection 2-1 thereof; and (3) that the defendants in their capacities as members of the Portsmouth planning board have no jurisdiction over the proposed sale and conveyance.

After a hearing before a justice of the Superior Court a judgment was entered declaring (1) that defendants had no jurisdiction over the proposed sale and conveyance; (2) that therefore it was not necessary, required or proper for plaintiffs to apply to the planning board or pursue other administrative remedies; (3) that the Superior Court had jurisdiction under the Uniform Declaratory Judgments Act and particularly §9-30-2 thereof, to hear and determine the instant cause; (4) that the proposed sale and conveyance was not a "subdivision" as defined in §45-23-1 or under the Portsmouth planning board's rules and regulations, particularly subsection 2-1 thereof; and (5) that Glen Farm Road, also known as Glen Farm Access Road, is a "street" within the meaning of §45-23-1 as well as within the meaning of the board's rules and regulations, particularly subsection 2-1 thereof. The defendants thereupon filed the instant appeal.[1]

---

[1]The words "subdivision" and "street" are defined in G.L. 1956 (1970 Reenactment) §45-23-1, which reads as follows:

"Definition of terms. — As used in this chapter: The word 'subdivision,'

The petition for declaratory judgment was heard upon the following agreed statement of facts. Reginald B. Taylor, one of the plaintiffs, is the owner of several hundred acres of farmland and residential property in the town of Portsmouth located in large part between Sandy Point Avenue and Glen Street. There is a private road or right-of-way 50 feet in width, macadamized and paved in the middle portion to a width of 16 feet with asphalt, originally constructed in 1923, and running through plaintiff Taylor's farmland from Glen Street on the north to Sandy Point Avenue on the south, and referred to as Glen Farm Road.

shall mean the division of a lot, tract or parcel of land into two (2) or more lots, sites or other divisions of land in such a manner as to require provision for a street, for the purpose, whether immediate or future, of sale or of building development.

"It also means the division of a lot, tract or parcel of land into three (3) or more lots, sites or other divisions of land of one (1) acre or less in area for such purpose. It also includes resubdivision and, when appropriate to the context, shall relate to the process of subdividing or to the land subdivided.

"The word 'street' includes street, avenue, highway, boulevard, parkway, road, lane, alley and other ways.

"The words 'plan commission' mean the the official planning agency of any city or town which adopts an ordinance under this chapter, whether designated as plan commission, planning commission, plan board, planning board or however otherwise designated; provided, however, that this amendment and definition of 'subdivision' shall not apply to or govern such lots, tracts or parcels of land which have been the subject matter of an application for subdivision or platting for subdivision pursuant to this statute filed within a period of two (2) years prior to April 27, 1964.

Section II, subsections 2-1 and 2-2 of the planning board's rules and regulations define the words "subdivision" and "street" as follows:

"2-1. The word 'subdivision' shall mean the division of a lot, tract, or parcel of land into two or more lots, sites, or other divisions of land, for the purpose, whether immediate or future, of rental or sale or of building development, whether the same be for rental or sale. However, it does not include any division of land into lots or other divisions of land, of one acre or more when no street is required to serve any of the parcels created by the subdivision.

"2-2. The word 'street' includes street, avenue, highway, boulevard, parkway, road, lane, alley and other ways."

The public has no rights in this road and the only persons having any rights in it are plaintiffs and owners of other parcels of land bounding on the road who have perpetual rights-of-way over it on foot and by vehicle and for transmission of electric, water and telephone service and have acquired their respective properties from time to time from plaintiff Taylor and his ancestors in title.

On May 22, 1975, Taylor entered into a binding contract to sell to plaintiffs Robert B. Rafferty and Judith M. Rafferty a parcel of land with the buildings thereon containing 3.426 acres of land abutting on said Glen Farm Road for a distance of about 540 feet and also bounding on other contiguous land of Taylor. The parcel in question is located in a rural residential area and contains a colonial-style residence at least 200 years old in which the Raffertys have lived as tenants of Taylor since September 1970.

Pursuant to G.L. 1956 (1970 Reenactment) ch. 23 of title 45, the town of Portsmouth enacted an "Ordinance for Subdivision of Land" which authorizes the existing planning board of the town to adopt rules and regulations as therein set forth. The board did adopt "Rules and Regulations Regarding the Platting or other Subdivision of Land." Subsection 2.1 of section II (Definitions) provides in part that:

> " 'subdivision' shall mean the division of a * * * of * * * sale. However, it does not include any division of land into lots * * * of one acre or more when no street is required to serve any of the parcels created by the subdivision."

Subsection 2-2 of the regulations provides that "street" includes:

> "street, avenue, highway, boulevard, parkway, road, land, alley and other ways."

In order to finance the purchase of this property, the Raffertys applied to a bank for a mortgage loan. The bank required a title examination which resulted in the bank requiring the Raffertys to obtain from the planning board an approval of the proposed transfer of title or a declaration from the board that approval was not required. Since neither was granted, plaintiffs, instead of appealing to the zoning board of review under §45-23-16, brought the instant petition for declaratory judgment under §9-30-2. In paragraphs seven and eight of their complaint plaintiffs make the following allegations:

"7. Because of said Certificate of Title and because the plaintiffs Rafferty had been advised indirectly and informally by members of the said Planning Board that its approval was necessary, the plaintiffs Rafferty through their attorney requested of the Planning Board among other things a statement that it had no jurisdiction.

"At an informal hearing on said request on April 16, 1975 said Board affirmed its jurisdiction and informed the plaintiffs Rafferty through their attorney that a new plat and petition in conformity with the Planning Board Rules and Regulations must be filed and advertised, and hearings held thereof and that if done the petition for approval as a subdivision would be denied and the plaintiffs Rafferty would then have as their only remedy an appeal to the Zoning Board of Review of said Town of Portsmouth.

"8. On the factual and legal situation herein set forth said Planning Board has no jurisdiction over the proposed conveyance as a subdivision or otherwise either under the enabling statute or under its own Rules and Regulations and to require the plaintiffs to proceed with the filing of a new petition and plat with the at-

tendant inconvenience and expense and with the certainty of disapproval by said Board and where the Board has no jurisdiction is a useless and futile procedure."

The parties further agreed that the sole issue in this case is whether or not the proposed conveyance is a "subdivision" within the purview of the enabling statute and the planning board's rules and regulations. They also agreed that the answer to this question in turn hinges on whether or not Glen Farm Road is a "street" as defined in the enabling act and in the rules and regulations.

The following persons appeared as witnesses at the hearing in the Superior Court.

Joseph Carvalho, the town's director of public works, testified for the board. His testimony is in substance as follows. He is familiar with the Glen Farm Road and has been since he was a little boy. The road is paved, varies in width from 16 feet to 12 feet, winds through a wooded area and is limited to its present width in some areas by a ravine. There is an outer gate of stone piers that are 15 feet apart and an inner gate also of stone piers that are 11 to 12 feet apart. Over the ravine there is a bridge, but two vehicles could not pass on it and the new hook and ladder firetruck would be "taking quite a gamble" to go over the Glen Farm Road because of the narrowness and sharp bends. Fifteen miles per hour was his estimate of the safe speed. The road was originally built for beautification and to serve the residents of the house in which the Raffertys now live and which they wish to purchase. There have been no accidents on the Glen Farm Road as far as he knows. On cross-examination he testified that firetrucks were able to get into the farm to put out a fire in a barn with no trouble in 1944.

Edward D. Fisher, the manager of Taylor's farm, testified that there are no plans to subdivide or develop the farm; that the road was paved around 1924 and has since

been resurfaced several times; that the house is of no use to the farming operation; and that there is a second road which runs east/west on the south side of the house which is mostly paved and leads to the East Main Road.

After carefully analyzing the testimony and other evidence before him the trial justice found that the proposed sale and conveyance was not a "subdivision" within the meaning of §45-23-1 or under the rules and regulations of the planning board, particularly subsection 2-1 thereof; that the Glen Farm Road, a private right-of-way on which the subject property bounds on two sides, is a street within the definition of the statute as well as within the definition set forth in the rules and regulations above referred to, particularly subsection 2-2. He therefore concluded that defendant planning board had no jurisdiction over the proposed sale and conveyance, that is, to approve or disapprove the sale, and that it was not incumbent upon plaintiffs to exhaust any administrative remedies before seeking relief in the Superior Court under the Uniform Declaratory Judgments Act. A judgment incorporating his decision was duly entered from which defendants filed the instant appeal.

In urging reversal, defendants disagree completely with the findings of fact and conclusions of law of the trial justice. They contend that the proposed sale and conveyance is a subdivision within the meaning of §45-23-1 and the board's rules and regulations and that Glen Farm Road is not a street within the meaning of the statute and the board's rules and regulations. Additionally they argue that plaintiffs should have exhausted their administrative remedies before seeking relief under the Uniform Declaratory Judgments Act.

## I

Initially, we address ourselves to the question of the planning board's jurisdiction over the proposed sale. The board has jurisdiction over sales of real estate only if the sale con-

stitutes a subdivision within the meaning of §45-23-1.[2] If there is an existing street, the board has no jurisdiction over the matter. *See Slawson v. Zoning Bd. of Review*, 100 R.I. 485, 492, 217 A.2d 92, 96 (1966).

We agree with plaintiffs' claim that the definition of "street" in §45-23-1 is broadly drawn to include lanes, alleys and other ways and that it acts as a grandfather clause to exempt sales of existing homes on existing streets or ways from the provisions of the subdivision statute. We also agree with their contention that since the thrust of the Act is to oversee and regulate new developments, it has no bearing on sales of existing houses such as the proposed sale in the case at bar and, therefore, the board is without jurisdiction to approve or disapprove the sale.

The trial justice found as a fact that Glen Farm Road provides satisfactory access to three public streets; that it is a street within the meaning of §45-23-1; and that it continues to serve both the parcel to be sold and the remaining acreage. He therefore concluded as a matter of law that the board had no jurisdiction.

Under our case his findings are entitled to great weight and will not be disturbed by us unless it is shown that his findings are clearly wrong or that he misconceived or overlooked material evidence. *Raheb v. Lemenski*, 115 R.I. 576, 579, 350 A.2d 397, 399 (1976). The defendants have made no such showing here.

We find no error in the trial justice's conclusion that, as a matter of law, the board had no jurisdiction to approve or disapprove the proposed sale. In our opinion *Slawson v. Zoning Bd. of Review, supra,* is controlling here. In that case, with reference to a jurisdictional problem in Barrington, Rhode Island, this court said:

---

[2]For definition of words "subdivision" and "street" see note 1, *supra.*

"G.L. 1956, §§45-23-1 and 45-23-2, and section B(1) of the Barrington Planning Board rules vest jurisdiction for the subdivision of land within the planning board only when the division of a single parcel into two lots requires provision for a street. Here, provision for a street is not required and the application was not properly before the Barrington Planning Board." *Id.* at 492, 217 A.2d at 96.

## II

We consider next defendants' contention that plaintiffs improperly failed to exhaust administrative remedies available to them by an appeal of the planning board's decision to the board of review or by application for a variance from the terms of the planning board's rules and regulations.

This issue was present in the case of *Frank Ansuini, Inc. v. City of Cranston,* 107 R.I. 63, 264 A.2d 910 (1970). In *Ansuini,* this court held that the exhaustion of adminstrative remedies was not necessary where there was an attack on an ordinance as facially unconstitutional or as in excess of statutory powers. *Id.* at 72-73, 264 A.2d at 915. The issue in the case at bar is jurisdictional, but the rationale of *Ansuini* is applicable. In that case the court did not require exhaustion of administrative remedies where the regulations promulgated by a planning commission were found to be beyond its power. In the case at bar the planning board has attempted to exercise jurisdiction which was in excess of its statutory and regulatory power. In the circumstances it was not necessary for plaintiffs to exhaust their administrative remedies before bringing the instant action since such a proceeding would have been futile. As this court said in *Ansuini:*

"it would have been futile for the instant plaintiff to have appealed to the board of review, since that agency lacked authority to declare as being a nullity a provision of the regulations which, like the board of

review itself, was a creature of the municipal legislature. [Citation omitted.] In such circumstances, the courts will not deny judicial relief on the ground that one invoking protection has first failed to do that which would be futile." *Id.* at 73, 264 A.2d at 915-16.

Moreover, even if it were possible for plaintiffs to obtain relief by administrative methods, the Uniform Declaratory Judgments Act (§9-30-1) grants the Superior Court "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 9-30-2[3] enumerates which persons may bring a declaratory judgment petition while §9-30-12 states that the Uniform Declaratory Judgments Act is to be "liberally construed and administered." As persons whose rights are affected by an ordinance plaintiffs are entitled to bring a declaratory judgment suit despite the possibility that administrative remedies might be available. See Super. R. Civ. P. 57, which states, in part, that:

"The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."

*See also Berberian* v. *Travisono,* 114 R.I. 269, 272, 332 A.2d 121, 123 (1975), where the court held that:

"the existence of alternate methods of relief does not preclude a party from relief available under the Uniform Declaratory Judgments Act."

---

[3]General Laws 1956 (1969 Reenactment) §9-30-2 reads as follows:

"Power to construe. — Any person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder."

Thus, we hold that the trial justice did not err in concluding that since resort to administrative remedies would be futile, exhaustion of administrative remedies was not required.

The defendants' appeal is denied and dismissed, and the judgment appealed from is affirmed.

MR. JUSTICE KELLEHER, with whom MR. JUSTICE JOSLIN joins, dissenting. The dispositive factual issue in this case is whether or not Glen Farms Access Road is a "street" within the meaning of G.L. 1956 (1970 Reenactment) §45-23-1. The planning commission said "no," the Superior Court said "yes," and, as a result of the plaintiffs' procedural detour, the planning board of review said nothing. Thus, the legal issue in this case is whether or not the board of review should have said something.[1] With all due deference to the trial justice's findings, the majority's sanctioning of the plaintiffs' shortcut to the Superior Court seems a dangerous inroad on the doctrine of exhaustion of administrative remedies, which necessarily prompts this dissent. While all roads may lead to Rome, where a detailed administrative procedure is outlined, it is incumbent upon the plaintiff to travel that route. Here, however, two procedural roads diverged, and the plaintiffs "took the one less traveled by. And that has made all the difference."[2]

The majority rely on *Frank Ansuini, Inc.* v. *City of Cranston,* 107 R.I. 63, 264 A.2d 910 (1970), and, in the alternative, certain language in our Declaratory Judgments Act to justify plaintiffs' resort to Superior Court. *Ansuini* is inapposite, and in support of this observation I need only

---

[1]In *E. Grossman & Sons,* v. *Inc. v. Rocha,* No. 74-134-A. (R.I., filed May 19, 1977), we pointed out that a municipal planning agency could be designated by a variety of titles, including such terms as plan commission, planning commission, plan board, or planning board, and that the board of review called for by G.L. 1956 (1970 Reenactment) §45-23-14 is a "super" planning board or commission.

[2]Robert Frost, *The Road Not Taken,* stanza 4 (1916).

reiterate the majority's own language concerning that case: "In *Ansuini*, this court held that the exhaustion of administrative remedies was not necessary where there was an attack on an ordinance as facially unconstitutional or as in excess of statutory powers." *Ante*, p. 9. Here there is no challenge to the ordinance on constitutional grounds, nor is the ordinance in excess of statutory power.

Clearly, plaintiffs cannot attack the commission's definition of a "street" as being beyond the commission's authority because the commission's definition is identical to the statutory definition of "street" that is set forth in the enabling legislation, §45-23-1. The commission was well empowered to determine, after considering the evidence, whether or not Glen Farms Access Road came within the statutory definition of "street." Such a determination involved the commission's factfinding power. Consequently, the *Ansuini* rule affords no support for the procedural route taken by plaintiffs.

The majority's comment, after referring to the statutory mandate for a liberal construction and administration of the Declaratory Judgments Act, that plaintiffs are entitled to bring their action "despite the possibility that administrative remedies might be available" is especially bothersome. This statement can effectively undermine the necessity of, and the purpose behind, administrative review. It is also clearly contrary to the weight of judicial thinking that has been expressed when this question has arisen in other jurisdictions. *Jarvis* v. *Kansas Comm'n on Civil Rights*, 215 Kan. 902, 528 P.2d 1232 (1974); *County Comm'rs* v. *Buch*, 190 Md. 394, 58 A.2d 672 (1948); *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination*, 364 Mass. 444, 305 N.E.2d 507 (1973); *In re Dewar*, 169 Mont. 437, 548 P.2d 149 (1976); *City of Cheyenne* v. *Sims*, 521 P.2d 1347 (Wyo. 1974). These cases point out that (1) while the declaratory judgment statute is remedial legislation, it is

not to be regarded as an automatic substitute for administrative proceedings; (2) the Legislature never intended that a declaratory judgment action could be used to usurp or replace specific administrative relief, especially when the initial decision-making responsibility has been vested in an administrative tribunal; and (3) courts should not interfere with the administrative process by assuming jurisdiction of declaratory judgment actions.

Today's holding brings into question the continued viability of our oft-repeated admonition that one must exhaust all administrative remedies before seeking judicial review.[3] It may be that we are about to witness a parade where those who are disappointed by what transpired at the administrative level will make for an exit road and, instead of following the procedural route to the Superior Court, will go directly to that tribunal by way of a declaratory judgment action.

Given the availability of relief before the planning board of review, with judicial review readily available thereafter, the trial justice erred in entertaining the plaintiffs' suit. I would grant the defendants' appeal.

---

[3]It should be noted that even in *Berberian* v. *Travisono*, 114 R.I. 269, 332 A.2d 121 (1975), we ruled that before declaratory relief could be granted, a trial justice should consider many factors, namely, the existence of another remedy, the availability of other relief, and the pendency of another action or proceeding which involves the same parties and in which may be adjudicated the identical issues that are involved in the declaratory action.