DECISION
This case is before the Court for decision on an appeal from a May 7, 2002 decision of the Zoning Board of Review for the Town of Little Compton ("Zoning Board"). At the time, the Zoning Board was reviewing what it designated as a "decision" of the local zoning official purportedly pursuant to G.L. 1956 § 45-24-64.
 Facts/Travel
Defendant Joel Flather ("Flather") is the owner of a parcel of land located at 2 Mullin
Hill Road, Little Compton, Rhode Island. The property straddles the state border between Little Compton, Rhode Island and Westport, Massachusetts. Each portion of the property is taxed by the town in which it lies and is assigned a plat and lot number by each town for that purpose.[1] The record indicates that Flather currently has a dwelling on the Little Compton side of the property, with ingress and egress over the Westport parcel. In October 2000, Flather sent a letter to William Moore, a/ka/ Bill Moore, ("Moore"), then Building Official — or zoning official — of the Town of Little Compton ("Town"). Letterfrom Joel Flather to Bill Moore, Bldg Inspector, Town of Little Compton
(Oct. 18, 2000). The letter indicated Flather's intent to relocate a cottage onto the Westport side of his property, which would result in two dwellings existing on the property.[2] The letter further indicated that the Westport Building Inspector had approved Flather's plan but that the approval was contingent upon that authority being presented with "a `letter of confirmation' from the Town of Little Compton stating that the placement of the cottage on the Westport, Massachusetts portion of the property will not violate any of [the Town's] subdivision regulations."Id. Flather requested that Moore provide him with such a letter. Flather did not specify upon what authority he believed Moore could act in responding to this request.[3]
Upon receipt of Flather's letter, Moore contacted the Town Council seeking the advice of the Solicitor. Letter from William L. Moore toLittle Compton Town Council (Oct. 18, 2000). Thereafter, the Solicitor advised the council that "nothing in the Little Compton ordinance or the state enabling act allows for the application of zoning regulations to land which falls outside the limits of the state of Rhode Island." Letterfrom Vernon L. Gorton, Esq. to Jane Cabot, President, Little Compton TownCouncil (Nov. 21, 2000). Then, on December 11, 2000, Moore wrote Flather and advised him that ". . . any questions regarding any construction on the Westport part of your property is best left to be judged by the Town of Westport Building Official. The Town of Little Compton has no jurisdiction over, nor do our local regulations apply to property located in the Town of Westport Massachusetts." Letter from William L. Moore toJoel Flather (Dec. 11, 2000).
Thereafter, on Jan 18, 2001, Plaintiff Ralph Tompkins, III ("Tompkins") filed an application with the Zoning Board. The application purported to appeal Moore's December 11, 2000 letter pursuant to section 14-9.3a of the Town of Little Compton Zoning Ordinance. Section 14-9.3a of the Ordinance states that the zoning board shall have the powers and duties "[t]o hear and decide appeals in a timely fashion where it is alleged there is error in any order, requirement, decision, or determination made by an administrative officer or agency in the enforcement of [sic] interpretation of this chapter." Tompkins attached a letter to his application in which he correctly pointed out that regardless of where the state line lay, Flather's lot was a single lot. He complained that Moore's letter of December 11, 2000 created a de facto subdivision approval and impliedly argued that Moore had, therefore, usurped the authority of the Town's planning board. He argued, too, that Moore's letter amounted to a decision or opinion by the building inspector that the local land use regulations should not be enforced with respect to the proposed development.
The Zoning Board heard the matter in a public hearing on March 21, 2001. At that time, the Zoning Board heard from both Tompkins and Flather. Thereafter, on May 7, 2001, the Board issued what it designated a "decision." According to that "decision," the Board's authority to hear Tompkins' "appeal" flowed from G.L. 45-24-63 64.[4] In its "decision," the Board agreed that the facts, including the fact that Flather's parcel was a single lot regardless of where the state line lay, were undisputed. In Re: Appeal From Decision of Building Officialdate December 11, 2000 by Ralph Tompkins III, (May 7, 2001). The Board went on to opine that the Town's authority to enforce its regulations ended at the Town line and it "upheld" what it referred to as Moore's "decision."[5] The Board further stated in its "decision" that it would send a letter to the Town of Westport Building Official informing him that the portion of Flather's lot lying in Little Compton fails to meet the minimum requirements of the zoning district in which it lies.
Within 20 days, on May 23, 2001, Tompkins filed an appeal with this Court. Characterizing Moore's December 11, 2000 letter as a "ruling" and the Board's May 7, 2001 action as a "decision," Tompkins contends that both actions constituted a de facto subdivision and, therefore, were in excess of the authority granted to the zoning official and Board by statute and ordinance. The Board responds by defending its conclusion that its authority ends at the state line and by denying that this conclusion operates as subdivision approval. Tompkins asks that the Board's decision be reversed and nullified.
 Standard of Review
When an appeal is properly before it, the standard of review for this Court's appellate consideration of a zoning board decision is articulated in G. L. 1956 § 45-24-69(D), which states:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
 Analysis
At the outset, this justice is compelled to observe that it has become a common practice for attorneys and landowners to attempt to use informational requests and Gen. Law § 45-24-54 as a vehicle to gain administrative approval for proposed development and/or changes in use. This misuse of G.L. 1956 § 45-24-54 has resulted in needless litigation before the state's zoning boards, as well as in the Superior Court. A threshold inquiry, then, concerns the effect of a zoning certificate or response to a request for information given pursuant to § 45-24-54 and the correlative provisions of a local zoning ordinance.
Section 45-24-54 of the Rhode Island General Laws bestows certain powers upon a zoning official or building official. Specifically, G.L. § 45-24-54 states:
 "The zoning ordinance must designate the local official or agency and specify minimum qualifications for the person or persons charged with its administration and enforcement, including: (1) the issuing of any required permits or certificates; (2) collection of required fees; (3) keeping of records showing the compliance of uses of land; (4) authorizing commencement of uses or development under the provisions of the zoning ordinance; (5) inspection of suspected violations; (6) issuance of violation notices with required correction action; (7) collection of fines for violations; and (8) performing any other duties and taking any actions that may be assigned in the ordinance. In order to provide guidance or clarification, the zoning enforcement officer or agency shall, upon written request, issue a zoning certificate or provide information to the requesting party as to the determination by the official or agency within fifteen (15) days of the written request. In the event that no written response is provided within that time, the requesting party has the right to appeal to the zoning board of review for the determination." (Emphasis added).
It is clear from the statutory language that either the zoning official or the zoning board of review, upon appeal in the event that the zoning official fails to respond to an informational request, may provide the requested information for the limited purpose of supplying guidance or clarification.[6]
One of the means by which this information can be provided is through the issuance of a zoning certificate. A zoning certificate is, by definition, a document signed by the zoning officer acknowledging that a use, structure, building, or lot complies with or is legally nonconforming to the provisions of the zoning ordinance or is an authorized variance or special use. See G.L. 1956 § 45-24-31(65);Town of Little Compton Zoning Ordinance, § 14-10(112). However, although a zoning certificate is issued by an official or officials of the municipality and although it may assist in clarifying questions concerning the present status of a use, structure, building or lot and whether it complies with or is legal under the ordinance, the purpose of the certificate is plainly to provide no more than informational assistance alone. Such a certificate does not operate to vest any rights in the owner of the property in question or the individual who may be making the request for the certificate. See G.L. 1956 §§ 45-24-31(65),45-24-54, 45-24-44. Therefore, although a zoning certificate may well serve as an indication about how the zoning official views the use, structure, building or lot insofar as it complies with the Ordinance — information that no doubt would be useful to property owners and others — it does not operate to create any enforceable rights or to divest existing rights.
It is also noteworthy that the purpose for which a zoning certificate is given is to provide information concerning the present status of the existing use, structure, building or lot but not proposed uses, structures, buildings or other development. Taking G.L. §§ 45-24-31(65) and 45-24-54 together, this Court concludes it to be plain that the zoning official or Board has authority only to issue a zoning certificate confirming that "a use, structure, building or lot either complies with or is legally nonconforming to the provisions of the municipal zoning ordinance or is an authorized variance or modification therefrom." G.L. § 45-24-31(65). Glaringly absent from this enabling language is any reference to "proposed" uses or structures. Moreover, the operative verbs are all cast in the present tense; that is, the zoning official must determine whether the subject "complies with or is legally nonconforming" or whether it "is an authorized variance." See id.[7]
"It is well settled that when the language of a statute is clear and unambiguous, [a] Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." RIH MedicalFoundation, Inc. v. Nolan, 723 A.2d 1123, 1126 (R.I. 1999) (quoting Statev. DiCicco, 707 A.2d 251, 253 (R.I. 1998)). "When confronted with an unambiguous statute, we must apply the statute as written." Id. Here, it is clear from the language employed that the zoning certification to be made under G.L. § 45-24-54 regards an existing use or structure. Thus, neither a zoning official nor zoning board of review may lawfully issue a zoning certificate for the purpose of making a binding or enforceable determination about whether or not a proposed use, structure, building or lot would be legal under a municipal ordinance. Given the language of the pertinent sections of the Enabling Act, it is clear that the practice of attorneys and landowners to request a zoning certificate as a means of gaining binding or enforceable administrative approval is wholly unavailing and is particularly so with respect toproposed uses or development. And, the endless hearings and litigation that have been spawned by the misuse of zoning certificates or misunderstanding of their significance is time poorly spent.
Likewise, G.L. 1956 § 45-24-54 also authorizes a zoning official or zoning board of review to supply other information, in writing, for the purpose of providing guidance or clarification. As with the case of a zoning certificate, it is clear from the plain language of G.L. 1956 §§ 45-24-44 and 54, that the zoning official or board, when furnishing information, is doing so for this limited purpose only and that, in supplying that information, does not affect the enforceable rights of any individual. Where the use, structure, building or other development is proposed, as opposed to existing, it is only through the submission of proper applications for necessary permits that a party can gain an enforceable approval of proposed plans. See G.L. 1956 § 45-24-44,General Provisions — Creation of Vested Rights. Therefore, the zoning official or board's power to provide information allows them to give non-binding, informational assistance only. So, just as is true in the case of zoning certificates, it is clear that the practice of attorneys and landowners to pursue a response to a request for information as a way to gain administrative approval is unavailing.
Dispositive of this case is the fact that the non-binding effect of information supplied pursuant to G.L. 1956 §§ 45-24-31(65) and 45-24-54
renders the contents of a zoning official's or zoning board's informational determination, generally, unappealable. It is true that zoning boards of review derive their authority to hear appeals from orders, requirements, decisions, or determinations of the local official or agency from G.L. 1956 § 45-24-57(A). However, G.L. §§ 45-24-63
and 64 limit a zoning board's authority to hear appeals from a decision of the local official or agency to those appeals brought by anaggrieved[8] party only.[9] Likewise, it is only an aggrieved party who may appeal a decision of a zoning board of review to the Superior Court and, where the individual claiming the appeal is not aggrieved of the zoning board's decision, this Court lacks the authority to hear the matter. G.L. 1956 § 45-24-69. See alsoTown of Coventry Zoning Bd. of Review v. Omni Dev. Corp., 814 A.2d 889, 896-97 (R.I. 2003) (citing DeCesare, 104 R.I. at 147 n. 1, 242 A.2d at 426 n.1 (Joslin, J. whom Kelleher, J. joins concurring in part and dissenting in part) (aggrievement is jurisdictional prerequisite to appeal)); 83 Am.Jur.2d Zoning and Planning, § 924 (statutes authorizing suit by person "aggrieved" are intended to broaden standing, for appeal, beyond parties of record); 59 Am.Jur.2d Parties §§ 34, 363 (standing is an aspect of subject matter jurisdiction). Thus, where the zoning official or board's action in issuing a certificate or providing information creates no vested rights under G.L. 1956 § 45-24-44, and is a non-binding and unenforceable determination creating no true controversy, there will usually[10] be no party who is aggrieved — a prerequisite to the Board's authority to hear appeals pursuant to G.L. 1956 §§ 45-24-63 and 64 as well as to this Court's appellate jurisdiction under G.L. 1956 § 45-24-69. In the case of proposed development in particular, it is only upon submission of a "substantially complete" application to the appropriate official or agency that a grant or denial of enforceable rights is at stake and a substantial interest will arise accordingly. G.L. 1956 § 45-24-44. See alsoTown of Little Compton Zoning Ordinance § 14-9.1(c). Thereafter, a grant or denial of the application would be an appropriate subject of review.
This Court's conclusion — that review is unavailable for determinations as to proposed plans made pursuant to a request that falls short of a substantially complete application for a building permit or for other relief allowed pursuant to the provisions of a local zoning ordinance — is confirmed by policy considerations, in light of settled principles of statutory construction. "In matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." Webster, 774 A.2d at 75 (citingMatter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire,637 A.2d 1047, 1050 (R.I. 1994)). "Moreover, when confronted with an unclear or ambiguous statute, there is room for statutory construction and we examine the statute in its entirety in order to `glean the intent and purpose of the Legislature.'" Id. (quoting In re Advisory to theGovernor, 668 A.2d 1246, 1248 (R.I. 1996). In doing so, "this Court `will not construe a statute to reach an absurd [or unintended] result.'"Hargreaves v. Jack, 750 A.2d 430, 435 (R.I. 2000) (quoting Kaya v.Partington, 681 A.2d 256, 261 (R.I. 1996)). Here, the framers of the Enabling Act contemplated, in G.L. § 45-24-44, that formal procedures would be established whereby, upon submission of a "substantially complete" application for development "submitted for approval to the appropriate review agency in the city or town," a party proposing development would gain vested rights to have the conformity of that development judged by existing ordinances. It would be an absurd construction to find, within the Enabling Statute, an alternative procedure whereby a party could gain the same rights by means of an informational request propounded to a zoning officer. Thus, any such alternative procedure could vest no rights, and a party wishing to act upon information obtained thereby would still be required to get binding approval through a formal application process. Clearly, the legislature did not intend the waste of resources that would result from redundant administrative or judicial review processes, as would be the case if review was available for the first, nonbinding decision.
Moreover, the availability of administrative or judicial review absent a formal application would encourage premature litigation-as this justice has observed to be occurring often. The requirement of a "substantially complete" application for a building permit or relief allowed pursuant to the provisions of a local zoning ordinance assures a sincere intent to develop, and thus a real case or controversy, and, in particular, discourages judicial involvement in local zoning matters when this involvement might ultimately become unnecessary as a result of an applicant's changed plans. See Pepperman v. Town of Rangeley, 659 A.2d 280
(Me. 1995) (where ordinance did not provide for appeal to the zoning board of an officer's violation determination, the board's unauthorized review of such determination was advisory in nature and not subject to judicial review). Furthermore, the doctrine of administrative finality suggests that judicial review should not be available when the same issue must reappear. See Marks v. Zoning Board of Review of City ofProvidence, 98 R.I. 405, 406, 203 A.2d 761, 763 (R.I. 1964) ("persons affected by a decision in zoning matters ought not to be twice vexed for the same cause and are entitled to have their rights and liabilities settled by a single decision upon which reliance may be placed").
In the instant case, the nature of Flather's request rendered it a request for information having to do with whether his development proposal might be a violation of the ordinance.[11] Had the zoning official, Moore, responded by providing the information requested, i.e. that the addition of a second structure on the lot, depending upon the details of the proposed building plans, might amount to a violation of the Town of Little Compton's Ordinance, including §§ 14-1.3b and 14-1.3d, the non-binding nature of that response would have rendered it non-appealable by virtue of G.L. 1956 §§ 45-24-63 and 64 and the lack of an aggrieved party.[12] Upon receiving the request, however, Moore, quite unnecessarily, informed Flather of the Town's legal opinion concerning its own authority. And, after Tompkins appealed that action to the Board, the Board followed suit by `upholding' Moore's determination in that regard. Thus, the zoning official and Board stepped beyond the parameters of merely supplying information and made a clearly unauthorized declaration concerning the Town's legal authority to respond in the event Flather were to undertake the proposed development. In doing so, the zoning official and the Board purported to affect the substantial interests of the Town, Flather and his abutting neighbors, including Tompkins, thereby creating a real and justiciable controversy and triggering this Court's jurisdiction pursuant to G.L. 1956 §45-24-69.[13]
It is well settled in this jurisdiction that local land use regulatory authorities lack authority to render advisory opinions or declarations.See, e.g., Taylor v. Marshall, 119 R.I. 171, 376 A.2d 712 (1977); Francov. Wheelock, 750 A.2d 957 (R.I. 2000); RICO Corp. v. Town of Exeter,787 A.2d 1136 (R.I. 2002). Thus, the Zoning Board clearly violated these well-established rules when it attempted to render an advisory opinion concerning the Town's authority, thereby acting in excess of its statutory authority and in violation of ordinance provisions.
 Conclusion
Although this Court has now determined that requests for information as to proposed uses, propounded to a zoning official or zoning board of review, can result in no vested rights and are not subject to judicial review, the board's decision must be reversed as being in excess of the authority granted to it by statute or ordinance. G.L. 1956 §45-24-69(d)(2).
[1] The Little Compton portion of the property is identified as Lot 42 of Plat 46 in the Tax Assessor's Records of the Town of Little Compton, and as Lot 7, Plat 87 in the Westport Tax Assessor's Records.
[2] The Little Compton Zoning Ordinance ("Ordinance") permits only one principal structure per lot which, seemingly, would make Flather's proposed development illegal under the Ordinance, § 14-1.3b.
[3] A zoning officer has the authority to issue a zoning certificate or provide other information pursuant to R.I.G.L. § 45-24-54 and § 14-9.1a of the Little Compton Zoning Ordinance. Presumably, Flather was intending to avail himself of Moore's authority thereunder.
[4] Together, those sections provide for an appeal to the zoning board, from a decision of the local official or agency, by an aggrieved party.
[5] The exact implications of the board's decision are unclear. Based upon a review of the record, it appears that the Board agreed with the plaintiff's position that the proposed development would violate the Ordinance in one way or another. Plaintiff's grievance stems from the Board's conclusion that the Town, nonetheless, could not enforce its Ordinance should Flather proceed with his plans. Plaintiff asserts that his amounts to a de facto subdivision.
[6] In addition to expressly stating that the officer's informational determination is to be for "guidance and clarification," the Legislature clearly distinguished the nature of this additional duty from the acts of "administration and enforcement," which describes those core functions of the zoning officer expressly enumerated in the preceding list. See §45-24-54(1)-(8). "Administration and enforcement" includes management and imposition of the zoning ordinance; together, the penumbra of these terms include every act that could be binding. With respect to said list, a principle of statutory construction is that "the expression of one or more items of a class and the exclusion of other items of the same class imply the legislative intent to exclude those items not so included." 2aSutherland Stat. Const. § 47:23 (6th Ed.), 313 n. 7 (citingSouthwestern Iron Steel Industries, Inc. v. State, 123 Ariz. 78, 597, P.2d 981 (1979)). And, while the list may not be exclusive, the Legislature clearly contemplated the officer's informational determination and intentionally excluded it from the list. Had the Legislature intended the informational determination to be binding, it would not have written a distinct provision for it.
[7] It does not escape this Court's attention that a proposed use, structure, or lot could only "comply," but could neither be "legally nonconforming" nor an "authorized variance."
[8] "Aggrievement in the personal sense requires an actual and practical, as distinguished from a mere theoretical, interest in the controversy' (citation omitted) and it results when the judgment whose review is sought adversely affects in a substantial manner a personal or property right of the applicant or imposes upon him some burden or obligation." Hassell v. Zoning Bd. Of Review 108 R.I. 349, 351,275 A.2d 646, 648 (1971) (citations omitted). See also East Providencev. Shell Oil Co., 110 R.I. 138, 142-43, 290 A.2d 915, 917-18 (1971). A nonbinding decision has no actual and practical effect on a party's rights and imposes no burdens. Rather, the only purpose to the information is to provide guidance as to what one's rights might ultimately be found to be. 
[9] Because appeals by aggrieved parties come within the ambit of § 45-24-57(A)(1), interpreting that section to require Board review of appeals by non-aggrieved parties would render §§ 63 and 64 redundant, or mere surplusage. This would violate the "canon of statutory interpretation which gives effect to all of a statute's provisions, with no sentence, clause or word construed as unmeaning or surplusage." Local400, International Federation of Technical and Professional Engineers v.Rhode Island State Labor Relations Board, 747 A.2d 1002, 1007 (R.I. 2000) (quoting Rhode Island Department of Mental Health, Retardation, andHospitals v. R.B., 549 A.2d 1028, 1030 (R.I. 1988)). Therefore, §§ 63 and 64 are properly interpreted as limiting the proper exercise of the zoning board's general authority under § 45-24-57. And because those sections define who may appeal, they provide a standing/jurisdictional limitation. See infra. Also, if the zoning board were required to entertain appeals from non-aggrieved parties there would be no limitation — would only parties to a non-binding decision be included, or could an individual with no discernible interest at all appeal an officer's determination (whether binding or not)? The result of such a rule would overburden the zoning boards. The Legislature could not have intended such an absurd result.
[10] It is conceivable that there may be situations in which an individual could be aggrieved of even a non-binding, informational determination made by a local zoning official. An example might be a situation in which a property owner requires a zoning certificate confirming the current status of the property for the purpose of, say, obtaining a mortgage or marketing the property. Were the zoning official to issue a zoning certificate containing incorrect information that the property was in violation of the local ordinance that, in turn, prevented the property owner from being able to obtain a mortgage or to sell the property, the property owner may well be aggrieved of that determination for purposes of an appeal notwithstanding the non-binding nature of the certificate.
[11] Flather's counsel acknowledged this in his memorandum to this court by stating, "the letter was merely a request for the Building Official in Little Compton to issue a letter stating that what was being done to the property in Westport, Massachusetts would not violate any of the Little Compton Ordinances." (Def.'s Mem. at 2).
[12] At that point, Flather could do one of two things. First, he could take heed of the information supplied by the zoning official and decide not to go forward with his proposed project. Or, he could disregard the information and proceed with his project, risking an enforcement action. Were the Town to commence enforcement proceedings, a justiciable controversy would arise in that context. Although this seemingly would place Flather in the position of making a Hobson's choice, the simple truth is that law cannot provide a risk-free future by eliminating, in advance, controversies not ripe for review.
[13] Assuming that this Court is incorrect in determining its jurisdiction to be triggered by G.L. 1956 § 45-24-69, the existence of a justiciable issue in the context of a real controversy makes it appropriate for the Court to treat the plaintiff's complaint as a petition for declaratory judgment and to exercise its discretion to render a decision pursuant to the Uniform Declaratory Judgment Act (UDJA). §9-30-1. See Taylor v. Marshall, 119 R.I. 171, 180 376 A.2d 712, 717 (1977) (when administrative board exceeds its jurisdiction, action for declaratory judgment is proper).