DECISION
Before this Court is an appeal from a decision of the Zoning Board of Review of the Town of Scituate (Board). Peeptoad Road Associates, LLC (Peeptoad) and Brian E. Carpenter (collectively Plaintiffs) seek reversal of an August 7, 2002 decision by the Board denying their request for a dimensional variance. Jurisdiction is pursuant to R.I. Gen. Laws §45-24-69.
 FACTS AND TRAVEL
Peeptoad is the owner of a 4.391 acre parcel of undeveloped land in the Town of Scituate, described as Lot 47 on Assessor's Plat 40 and formerly part of a larger lot, Lot 17, which was divided into two lots in 1969. According to the plat map, Lot 47 is completely landlocked and located approximately 250' south of Peep Toad Road, bordered by Lot 17 to the north and Lot 99 to the east, which extends to and fronts the road. Peeptoad's deed to Lot 47 grants it a 40 foot wide right-of-way over Lot 17.
On April 1, 2002, Plaintiffs filed an application with the Scituate Zoning Board seeking a dimensional variance to build a single-family house on the site, which is located in a RS-120 Single-Family Residence district. The Plaintiffs stated as grounds for the variance that the "lot is a substandard lot of record since it has no road frontage but was created prior to the Town of Scituate Zoning Ordinances being enacted."[1] Plaintiff's sought permission to use the 40' right-of-way as access to the road.
On April 23, 2002, the Board conducted a hearing on Plaintiffs' application. The Board read into the record a letter from the Plan Commission dated April 19, 2002. The Plan Commission had reviewed the application and cited two conditions that would bring the application within the Comprehensive Plan: (1) the subject parcel must be legally non-conforming and (2) the parcel must have complete, legal access to Peep Toad Road. Discussion ensued as to whether the 40' right-of-way actually extended to Peep Toad Road or if, in fact, Lot 16 (located to the north of Lot 17) intersects with the road at a point, such that Lot 17 has no frontage on the road. The Assessor's Plat shows that a sliver of Lot 16 borders Lot 17, thus preventing frontage on the road. The Plaintiffs submitted a survey by Waterman Engineering showing that the 40' right-of-way extends to and fronts the road for its full width. The Board continued the hearing so that Plaintiffs could present evidence that the right-of-way extended to Peep Toad Road.
At the second hearing, June 25, 2002, Plaintiffs presented an enlarged copy of the Waterman Engineering survey, clearly depicting that the 40' right of way fronts the street. The Board discussed the fact that the legal descriptions of the property may not be in accord with this survey, and questions were raised as to a right-of-way over Lot 16 to the road. After discussion of the lot's possible illegality, the Board voted unanimously to deny Plaintiffs' application.
On August 1, 2002, the Board issued its written decision denying the variance and concluding that the lot is an illegal lot of record and does not have access to Peep Toad Road via the 40' right-of-way. The Board further stated that the perceived hardship did not arise from peculiar site conditions of the land, but from the actions of the applicant's predecessor in title. The Plaintiffs timely filed this instant appeal pursuant to R.I. Gen. Laws § 45-24-69.
 STANDARD OF REVIEW
This Court has jurisdiction of this appeal pursuant to R.I. Gen. Laws § 45-24-69. That statute outlines the standard of review applicable to this appeal, as follows:
 [t]he court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This Court's review is circumscribed by and deferential to the administrative agency. Restivo v. Lynch, 707 A.2d 663, 667 (R.I. 1998). It cannot substitute its judgment for that of the zoning board, but must uphold a decision supported by substantial evidence contained in the record. Hein v. Town of Foster Zoning Bd. of Rev., 632 A.2d 643, 646 (R.I. 1993). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Rev. of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George ShermanSand and Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). Thus, the Court must examine the record to determine whether competent evidence exists to support the Zoning Board's decision. New England NaturistAssoc., Inc. v. George, 648 A.2d 370, 371 (R.I. 1994).
 DECISION SUPPORTED BY SUBSTANTIAL EVIDENCE
The Board based its decision to deny Plaintiffs' request for a dimensional variance on its finding that Plaintiffs were unable to establish the two conditions set forth by the Plan Commission: the lot must be legally non-conforming and have complete, legal access to Peep Toad Road. Plaintiffs contend that the Board's decision is clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record.
Illegal Lot
The Board found "as a fact that Lot 47 was created after December 30, 1965, when the Town of Scituate Zoning Ordinances were enacted."Decision of Board at 1 (emphasis in original). The lot was created on April 28, 1969 by a deed of Arthur and Ruth Erickson to Andrew and Mary Erickson by an illegal subdivision never reviewed or approved by the Plan Commission. The ordinance in effect at the time of the conveyance provided that "[t]here shall be no subdivision (as defined in [R.I. Gen. Laws § 45-23-1 (1956)]) of any lot, tract or parcel of land within the Town . . . without the prior submission to, and approval of, the Plan Commission." Town of Scituate Rules and Regulations Governing and Restricting the Platting or Other Subdivision of Land at 3. The General Laws in effect at the time defined a subdivision as "the division of a lot, tract or parcel of land into two (2) or more lots . . . in such a manner as to require provision for a street. . . . The word `street' includes street, avenue, highway, boulevard, parkway, road, lane, alley and other ways." R.I. Gen. Laws § 45-23-1 (1956).
Plaintiffs contend that provision for a street was not required because both lots had the same access to Peep Toad Road via the 40' right-of-way. In situations where access to a street already exists, the Supreme Court has held that provision for a street is not necessary.Taylor v. Marshall, 119 R.I. 171, 172-77, 376 A.2d 712, 713-16 (1977) (each parcel would have access to public streets by means of a paved right-of-way that had been in existence for many years); see Weaver v.United Congregational Church, 120 R.I. 419, 422, 388 A.2d 11, 13 (1978) (proposed lots would front existing street and therefore would not require provision for a street).
The instant case is distinguishable because the 40' right-of-way never existed prior to the Ericksons' division of the property. That the Ericksons created the right-of-way when dividing the property demonstrates that provision for a street, or "other way," was indeed necessary. The Ericksons essentially attempted to circumvent the subdivision regulations by creating their own right-of-way without approval from the Plan Commission. Accordingly, the Board's finding that this was an illegal subdivision was not erroneous.
Legal Access to Peep Toad Road
Plaintiffs contend that the Board erred in determining that Lot 47 did not have complete legal access to Peep Toad Road. The Board based its decision on the Waterman Engineering survey and a title examination by Francis H. Daigneault, President of Stewart Title, finding that the survey was vague as to Lot 17's intersection with Peep Toad Road and that Daigneault's letter supported the conclusion that "[a] triangular sliver of Lot 16 . . . separates the northernmost boundary of the 40' right-of-way from Peep Toad Road." Decision at 2. Daigneault stated that "Lot No. 16 is adjoined on the east by Peep Toad Road, which most southwesterly terminus, on said plat, is at a point within said Lot No. 16." The Board found no evidence to contradict the inference that Lot 17 intersects Peep Toad Road at a point, as shown on the Assessor's Plat. The Board concluded that Lot 17's access to Peep Toad Road depended on a driveway easement over Lot 99; and, accordingly found that "access may not be granted via the 40' right of way across Lot 17, because Lot 17 depends upon Lot 99 for access to Peep Toad Road." Decision at 4. Plaintiffs, however, contend that Lot 17 has access to the road via an easement over Lot 16 and does not depend upon access through Lot 99.
The Board had before it the deeds necessary to determine the rights of way afforded to the owners of Lots 17 and 47. Lot 16's present owner, Edward Melucci, was granted a deed to the property subject to the "rights of the heirs or devisees of Benjamin F. Smith and the owners of Bushee land to pass and repass to and from [Peep Toad Road]." Benjamin F. Smith and Bushee were both owners of Lot 17 at one time. That right-of-way dates back to November 12, 1937, when Myra May Peckham granted Lot 16 to Norman and Leonora Blair (Peckham-Blair deed) subject to the rights of others to use Peep Toad Road[2] as a public highway and the rights of the heirs and devisees of Benjamin F. Smith to pass to Peep Toad Road over a portion of her land. The owners of Lot 17, therefore, have a right-of-way over Lot 16 in order to access Peep Toad Road.
By deed dated September 26, 1949, John Champlin (former owner of Lot 99) granted James Bushee (former owner of Lot 17) an easement over his property to be used for driveway purposes. James Bushee granted Lot 17 to Arthur and Ruth Erickson[3], who then granted a portion of that land (Lot 47) to Andrew and Mary Erickson. The deed, dated April 28, 1969, granted to Andrew and Mary Erickson Lot 47 together with the right to use a strip of land 40 feet wide extending from Lot 47 to the northerly line of Lot 17, along with those rights-of-way described in the deed to Arthur and Ruth Erickson from James Bushee.
Plaintiffs acknowledge that one cannot access Peep Toad Road from Lot 17 without passing over Lot 16. Plaintiffs provided a detailed drawing in their brief that was not part of the record clearly showing that Lot 17 intersects Peep Toad Road at a point and cannot be accessed without the right of way over Lot 16. The Waterman Engineering survey, therefore, is certainly vague as it illustrates the 40' right-of-way extending all the way to Peep Toad Road for its full width, showing only the driveway easement over Lot 99 and no such easement over Lot 16.
The evidence of record indicates that Lot 17 has legal access to Peep Toad Road using either the easement over Lot 16 or Lot 99. The Board, however, did not have before it reliable, probative and substantial evidence that Lot 47 has complete, legal access to Peep Toad Road. This Court is not convinced that Lot 47 has complete, legal access to Peep Toad Road. The deed to Andrew and Mary Erickson establishing the 40' right-of-way references rights of way described in the deed to the grantors, but this deed is not in the record. There is no evidence to indicate which rights-of-way, if any, provide access to Peep Toad Road from Lot 47. Accordingly, the Board's finding that Lot 47 did not have complete, legal access to Peep Toad Road is not clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record.
 THE REQUEST FOR DIMENSIONAL RELIEF
Plaintiffs contend they are entitled to have their application granted as a matter of law because the application has satisfied all five standards for the granting of a dimensional variance. The Rhode Island Zoning Enabling Act provides that the applicant seeking relief from zoning restrictions bears the burdens of production and persuasion as to why such relief is warranted. Dilorio v. Zoning Bd. of Review of EastProvidence, 105 R.I. 357, 362, 252 A.2d 350, 353 (1969); see also SNETCellular, Inc. v. Angell, 99 F. Supp.2d 190 (D.R.I. 2000) (under Rhode Island law, the petitioner bears the burden of demonstrating that a variance should be granted). Thus, when applying for dimensional variances, the applicant needs to demonstrate to the zoning board:
 (c)(1) [t]hat the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant. . . .
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
(4) That the relief to be granted is the least relief necessary.
 * * *
 (d)(2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience, which means that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief. R.I. Gen. Laws § 45-24-41
(1956).
At the time of the hearing, the Supreme Court's interpretation of then-section 45-24-1 required the applicant for a dimensional variance to demonstrate that "no other reasonable alternative" exists for the enjoyment of a property's legally permitted use. Sciacca v. Caruso,769 A.2d 578, 583 (R.I. 2001). On June 28, 2002 (after the hearing, but before the Board's decision), the State General Assembly repealed that portion of the Enabling Act and returned to the Viti standard pursuant to which the applicant need only demonstrate that the hardship amounts to "more than a mere inconvenience." Viti v. Zoning Bd. of Review ofProvidence, 92 R.I. 59, 166 A.2d 211 (1960).
Plaintiffs contend that the Board applied the wrong standard by referencing public interest and deprivation of beneficial use standards. Regardless of the standard to be applied, a self-created hardship is "never considered proper grounds for a variance." E.C. Yokley, Zoning Lawand Practice § 21-5 (4th ed. 1979). The legislative grant of power to boards of review "was never intended as a method of sanctioning conditions which do not conform because such conditions were brought about by a landowner subsequent to the adoption of zoning regulations."Rozes v. Smith, 120 R.I. 515, 521, 388 A.2d 816, 820 (1978) (citingSlawson v. Zoning Bd. of Review, 102 R.I. 552, 232 A.2d 362 (1967)).
Plaintiffs further claim that the hardship was not self-created, but the result of the prior actions of the Ericksons in creating the lot. However, "[p]urchasers have constructive notice of the zoning restrictions which exist when they buy the land." 7 Rohan, Zoning andLand Use Controls § 43.02[6][c]. Further, "one cannot prevent application of the self-created hardship doctrine by claiming that a city official told the landowner that the use was proper when in fact the law was to the contrary." Id. at § 43.02[6][a]; see also Sch. Comm. ofProvidence v. Bd. of Regents for Educ., 429 A.2d 1297, 1302 (R.I. 1981) (public agent must have actual authority to bind municipality). Plaintiffs glean no support for their belief that the lot was buildable based on either statements from their realtor, not a city official, or from the fact that the lot had been taxed for 34 years as buildable.
Plaintiffs attempt to gain support for their claim by adverting to cases in which an applicant's knowledge at the time of purchase that a lot requires zoning relief will not prevent denial of relief on the ground of self-created hardship. See DeStefano v. Zoning Bd. of Review ofWarwick, 122 R.I. 241, 248, 405 A.2d 1167, 1171 (1979); Denton v. ZoningBd. of Review of Warwick, 86 R.I. 219, 223, 133 A.2d 718, 720 (1957). Their reliance on those decisions is misplaced, however, because those cases dealt with substandard lots of record. A substandard lot is "[a]ny lot lawfully existing at the time of adoption or amendment of a zoning ordinance and not in conformance with the dimensional and/or area provisions of that ordinance." R.I. Gen. Laws § 45-24-31. The lot in the instant case, however, was created after the enactment and in violation of the zoning ordinance. Plaintiffs' circumstances are thus distinguishable from a substandard lot because the nonconformance here is not a result of a subsequent zoning ordinance, but from Lot 47's previous owners' deliberate actions in creating an illegal subdivision.
The Rhode Island Supreme Court has consistently held that boards of review do not have the power to sanction a landowner's illegal subdivision through the grant of a variance. Slawson v. Zoning Bd. ofReview of Barrington, 102 R.I. 552, 556, 232 A.2d 362, 364 (1967); seeRozes v. Smith, 120 R.I. 515, 388 A.2d 816 (1978). While the Court has not squarely addressed the issue concerning subsequent owners of illegal lots, the Connecticut Supreme Court has denied variances on the grounds that the lot was created by an illegal subdivision by a previous owner.Abel v. Zoning Bd. of Appeals of Norwalk, 374 A.2d 227 (Conn. 1997) (holding that the board lacks power to grant variance where applicant or predecessor creates non-conformity). Plaintiffs, likewise, cannot seek a variance to relieve the illegality of the subdivision. A dimensional variance "affords relief from provisions that govern area and setback restrictions and comes into play only when the project involves a permitted use." Northeastern Corp. v. Zoning Board of Review of NewShoreham, 534 A.2d 603, 605 (R.I. 1987). This is not a situation wherein the applicant is seeking to relieve a non-conformity for which his predecessor in title could have been granted relief in the form of a variance. As Peeptoad's predecessors would not have been able to correct the illegality by seeking a variance because they created the illegality, the Board is similarly without power to sanction the illegal subdivision through the grant of a variance.
 CONCLUSION
After review of the entire record, this Court finds that the decision of the Board to deny Peeptoad's application for a dimensional variance is supported by the reliable, probative, and substantial evidence contained in the record and is not in excess of the Board's statutory authority or in violation of the provisions of any statute or ordinance. The substantial rights of the plaintiffs have not been prejudiced by the decision. Accordingly, the Board's decision is affirmed.
[1] The lot was, in fact, created after the enactment of the Town's zoning ordinances. The Town's first zoning ordinance was enacted in 1965 while the lot was created in 1969. Plaintiffs acknowledge this error in their memorandum.
[2] The deed denotes Harrisdale Road, but Plaintiffs presume Harrisdale Road is now Peep Toad Road.
[3] This deed is not part of the record.