No. 47,515

In The Matter Of Albert Jarvis, *Appellee,* v. Kansas Commission On Civil Rights, Joyce Haskins, Anthony Lopez, Bernard Stewart and Joseph L. Tate, *Appellants.*

(528 P. 2d 1232)

Opinion filed December 7, 1974.

*David Ryan,* of Topeka, argued the cause, and *Vern Miller,* attorney general, and *Charles S. Scott,* of Topeka, were with him on the brief for the appellants.

*William Scott,* of Kansas City, Kansas, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: This appeal is brought by the defendant, Kansas Commission on Civil Rights, hereinafter referred to as Commission, to set aside an order of the district court granting a declaratory judgment and an injunction against the Commission from continuing or persisting in its efforts to require the respondent to pay moneys to the complainant either in a conciliation conference or at a public hearing. The Commission's principal argument before this court requires us to reexamine the doctrine of exhaustion of administrative remedies and consider its application to the facts of the instant case.

The present controversy arose from an allegation of housing discrimination. Complainant Joyce Haskins, a white woman with three children from her marriage with a black man, moved into an apartment owned by respondent Albert Jarvis, on February 19, 1971. Prior to the expiration of her six months' lease, however, Jarvis served Mrs. Haskins with a thirty-day eviction notice requiring her to vacate the premises by July 19, 1971. On August 16, 1971, Jarvis obtained a judgment in the magistrate court evicting the complainant and she subsequently moved her family out of the apartment.

On or about July 30, 1971, complainant Haskins filed a housing discrimination complaint with the Commission charging respondent with having evicted her because of the race of her children, in violation of the Kansas Act Against Discrimination, K. S. A. 44-1016 (*a*). The Commission determined that probable cause existed for crediting the allegations of the complaint and notified respondent that on September 23, 1971, it would attempt to eliminate or correct the alleged discriminatory housing practice by the informal methods of conference, conciliation and persuasion, as required by K. S. A. 44-1019 (*c*). The conciliation conference was held with members of the Commission's staff and respondent's attorney present. After considerable discussion, efforts to reach an agreement failed because the Commission insisted upon reimbursement of complainant for specified damages listed in the proposed conciliation agreement. Respondent refused to agree to pay any compensatory damages as he felt the Commission was without legal authority to require damages in a conciliation conference. Thereafter, the Commission notified respondent that it would hold a public hearing on February 25, 1972, pursuant to K. S. A. 44-1019 (*d*).

Three days prior to the scheduled date for the hearing, respondent sought and obtained a restraining order of the district court enjoining the Commission from holding any public hearings on this matter, and declaring the Commission to be without authority to award compensatory damages. Subsequently, the court permanently enjoined the Commission from continuing or persisting in its efforts to require respondent to pay moneys to complainant, either in a conciliation conference or at a public hearing. It is the validity of that order that the Commission now questions.

The Kansas Act Against Discrimination, K. S. A. 44-1001, *et seq.*, declares it to be the policy of this state to eliminate and prevent discrimination in all employment relations, in places of public accommodations, and in housing. The provisions of the act are to be construed liberally for the accomplishment of the purposes thereof. (44-1006.) To protect these rights, 44-1003 provides for the creation of a state commission having the power to eliminate and prevent such discrimination. Under 44-1004 the Commission on Civil Rights is given a broad list of functions, powers and duties, including the following:

"(3) To adopt, promulgate, amend and rescind suitable rules and regulations to carry out the provisions of this act, and the policies and practices of the commission in connection therewith.

"(4) To receive, initiate, investigate, and pass upon complaints alleging discrimination in employment, public accommodations and housing because of race, religion, color, sex, national origin or ancestry.

. . . . . . . . . . . . . . .

"(6) To include any term in a conciliation agreement as could be included in a final order under this act.

. . . . . . . . . . . . . . .

"(8) To issue such final orders after a public hearing as may remedy any existing situation found to violate this act and prevent its recurrence."

In K. S. A. 44-1019 the administrative procedure for handling a complaint is set forth in detail. Briefly stated, any person who feels he has been discriminated against may file a complaint with the Commission. Upon receipt of such complaint, the Commission has ten days in which to furnish a copy thereof to the person, or persons, who allegedly committed the discriminatory practice. Thereafter, the Commission shall promptly commence an investigation into the matter, as provided in K. S. A. 44-1005, to determine whether probable cause exists for crediting the allegations of the complaint. If it is determined that probable cause exists, the Commission is directed to attempt to eliminate or correct the discrimination by informal methods of conference, conciliation and persuasion. The Commission is authorized to enter into formal conciliation agreements between the parties, which may include in the provisions thereof any term or condition which may be included in a final order of the Commission.

If the Commission is unable to correct the discriminatory practice, K. S. A. 44-1019 (d) provides for the holding of a public hearing before the Commission; then, if it finds the respondent has engaged in any discriminatory practice it shall state its findings of fact and order respondent to cease and desist from such practice or take any other necessary action to effectuate the intent of the act.

The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. A primary purpose of the doctrine is the avoidance of premature interruption of the administrative process. It is normally desirable to let the administrative agency develop the necessary factual background upon which its decisions are based. Since agency decisions are frequently of a discretionary nature, or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. It is more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate

stages. The very same reasons lie behind judicial rules sharply limiting interlocutory appeals. Frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures. (*McKart v. United States,* 395 U. S. 185, 23 L. Ed. 2d 194, 89 S. Ct. 1657; *Fed. Power Comm'n v. Edison Co.,* 304 U. S. 375, 82 L. Ed. 1408, 58 S. Ct. 963.)

In *Myers v. Bethlehem Corp.,* 303 U. S. 41, 82 L. Ed. 638, 58 S. Ct. 459, Bethlehem brought a bill in equity against officials of the National Labor Relations Board to enjoin them from holding a hearing on a complaint issued by the Board against Bethlehem. In reversing the lower court's injunction the court stated:

". . . The contention is at war with the long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. . . .

"Obviously, the rule requiring exhaustion of the administrative remedy cannot be circumvented by asserting that the charge on which the complaint rests is groundless and that the mere holding of the prescribed administrative hearing would result in irreparable damage. . . ." (pp. 50, 51.)

In *Jenkins v. Newman Memorial County Hospital,* 212 Kan. 92, 510 P. 2d 132, this court had the opportunity to apply the exhaustion doctrine to a controversy arising under the Kansas Act Against Discrimination. The complainant charged she was denied readmission to school because of her race. Unlike the instant case, however, the Commission did hold a hearing and discrimination was found. When the Commission ordered the complainant to be readmitted to the hospital school, the hospital immediately filed an appeal in the district court for judicial review without requesting a rehearing before the Commission as required by K. S. A. 44-1010. The appeal was dismissed by the district court. In affirming the district court, we stated:

"It is clear the rehearing requirement is provided as a proper administrative law procedure in order to assure exhaustion of administrative remedies. The doctrine of exhaustion of administrative remedies is directed toward promoting proper relationships between the courts and administrative agencies charged with particular administrative and regulatory duties. It promotes orderly procedure and requires a party to exhaust the administrative sifting process with respect to matters peculiarly within the competence of the agency. It requires avoidance of interference with functions of the administrative agency by withholding judicial action until the administrative process has run its full course. The failure to exhaust administrative remedies has often been emphasized as a ground for denying judicial review. It rests on sound consideration of comity and convenience, fully recognizing the separation of powers doctrine

as set forth in our case law. (*Colorado Interstate Gas Co. v. State Corporation Comm.,* supra; *Graves Truck Line v. State Corporation Commission,* supra; *Strader v. Kansas Public Employees Retirement System,* 206 Kan. 392, 479 P. 2d 860, cert den. 403 U. S. 914, 29 L. Ed. 2d 692, 91 S. Ct. 2240.)" (p. 95.)

In applying these principles to the instant case, we conclude the district court erred in enjoining the Commission's hearing. The informal opinions, policies and pronouncements of administrative employees do not constitute final agency action. The Commission was still acting under its executive function and had not begun its adjudicatory process. The exhaustion doctrine dictates that an administrative remedy be sought and completed before the courts will act. Since respondent had not exhausted his administrative remedies and no hearing had been held nor final order rendered, the district court acted prematurely in issuing its order.

In its action in the district court, respondent has attempted to employ the provisions of the declaratory judgment statute. (K. S. A. 60-1701.) Even if an actual controversy existed between the parties, we cannot permit the use of a declaratory judgment in this situation. The courts should not interfere with administrative proceedings and assume jurisdiction of declaratory judgment proceedings until administrative remedies have been exhausted. (22 Am. Jur. 2d, Declaratory Judgments, § 31, p. 881.)

In light of what we have said concerning the premature nature of the district court's order in this case it is not necessary for us to reach the question of the authority of the Commission to award damages for losses incurred as a result of discriminatory practices. A determination of that issue would be more appropriate upon review of the Commission's final action.

The judgment of the district court is reversed and the injunction discharged.