(821 P.2d 334)
No. 66,660

ZION LUTHERAN CHURCH OF PRAIRIE VILLAGE, KANSAS, *Appellee*,
v. KANSAS COMMISSION ON CIVIL RIGHTS, *Appellant*.

Opinion filed November 22, 1991.

*Arthur W. Solis*, senior legal counsel, Kansas Commission on Civil Rights, of Topeka, for the appellant.

*David J. Waxse* and *Barbara A. Harmon*, of Shook, Hardy & Bacon, of Overland Park, for the appellee.

Before LEWIS, P.J., LARSON, J., and ROBERT C. HELSEL, District Judge Retired, assigned.

LEWIS, J.: In this action, the Kansas Commission on Civil Rights (KCCR) is attempting to assert jurisdiction over the Zion Lutheran Church of Prairie Village, Kansas (Church). Senate Bill 456 changed the name of KCCR to "Kansas Human Rights Commission," effective July 1, 1991. For the purposes of this opinion, however, we will continue to refer to the commission as "KCCR." A complaint was filed before KCCR, alleging race and sex discrimination was practiced by the Church in the operation of a child day care center.

The trial court determined that KCCR had no jurisdiction over the Church and enjoined KCCR from proceeding on the discrimination claim noted above. KCCR appeals from that ruling.

The Church is a non-profit religious corporation, organized under the laws of the State of Kansas, with its principal office located in Prairie Village. The Church is a sectarian corporation whose articles of incorporation state that its purpose is "to carry on religious, benevolent, educational and missionary work in agreement with the principles of the Lutheran Church, Missouri Synod, as set forth in the Unaltered Augsburg Confession." In pursuance of that purpose, the Church owns and operates a church facility at 7501 Belinder in Prairie Village.

The Church also operates a child day care program in the Church building at the address listed above. This program is administered by the Zion Child Care Administrative Board.

The Church employed various individuals in the operation of its child care program. One of those individuals, a former employee, filed a verified complaint, alleging that race and sex discrimination was practiced by the Church when his employment was terminated. This complaint was filed under the Kansas Act Against Discrimination (KAAD) before KCCR, which took jurisdiction over the complaint.

KCCR determined that probable cause existed to conduct a hearing on the complaint and notified the Church of that decision.

Prior to any hearing being conducted or to any discovery procedures being conducted, the Church filed a motion to dismiss the pending KCCR action on the grounds that KCCR lacked subject matter jurisdiction over the Church. Attorneys for KCCR opposed that motion and filed an appropriate response to it.

The hearing examiner for KCCR concluded that he would defer all action on the motion to dismiss until the conclusion of the public hearing on the complaint.

After the hearing examiner failed to rule on the Church's motion to dismiss, the Church resorted to the courts of this state by filing the instant matter in the district court, seeking injunctive relief.

The trial court conducted a hearing on the Church's petition and ruled that the petition was meritorious. Accordingly, the trial court held that KCCR has no jurisdiction over the Church and

enjoined KCCR from further proceedings on the complaint filed against the Church.

## JURISDICTION

The first issue we must determine is whether the trial court had jurisdiction over the action filed by the Church.

KCCR argues that the Church failed to exhaust its administrative remedies. It relies on the decision of *Jarvis v. Kansas Commission on Civil Rights*, 215 Kan. 902, 906, 528 P.2d 1232 (1974), for the proposition that all administrative channels must be exhausted before a trial court would have jurisdiction to issue orders in a case of this nature.

We agree with KCCR that the Church had not exhausted its administrative remedies prior to the filing of the present action in the district court. We further agree that *Jarvis*, in general, does require a litigant to exhaust all administrative remedies available before seeking relief from the courts. Despite our general agreement on these issues, we hold that, in this case, KCCR's argument is misplaced. We conclude that this case is governed by an exception to the general rule stated in *Jarvis* and that the trial court did have jurisdiction to grant the injunctive relief.

Determining whether the trial court had jurisdiction in the present controversy is a question of law and, as such, our review is unlimited. *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

We hold that the question in this case is controlled by our decision in *R. D. Andersen Constr. Co. v. Kansas Dept. of Human Resources*, 7 Kan. App. 2d 453, 643 P.2d 1142, *rev. denied* 231 Kan. 801 (1982). In that case, we held:

"It is a well-recognized exception to the rule in *Jarvis* that judicial review of interlocutory rulings of an administrative agency is proper if the agency has exercised authority in excess of its jurisdiction or acted in some manner that is contrary to its statutory grant of authority. [Citations omitted.]" 7 Kan. App. 2d at 456.

In *R. D. Andersen*, a claim for wages was filed against Andersen before the Kansas Department of Human Resources. Andersen responded to that claim by seeking injunctive relief from the district court on the theory that an administrative agency had no

jurisdiction over it. The district court agreed and granted the relief sought.

In that case, as here, the decision was appealed to this court on the theory that administrative remedies had not been exhausted. We affirmed the action of the trial court and said: "The rule of *Jarvis* is not questioned in this case, but it has no application here. The issue in this case is whether there were any administrative remedies provided at all, not whether they had been exhausted." 7 Kan. App. 2d at 456. We went on to say that the rule of law allowing "extraordinary judicial remedies to curtail or prohibit unlawful action by an administrative agency" has been recognized by the Kansas Supreme Court since 1916, where, in *State, ex rel., v. Mohler*, 98 Kan. 465, 472, 158 Pac. 408 (1916), the court stated: " 'If this power is abused, the courts are open to the aggrieved party, if not by some statutory review, then by the extraordinary and prerogative remedies of injunction or mandamus.' " 7 Kan. App. 2d at 457.

The present action mirrors *R. D. Andersen*. The Church claims that, as a sectarian corporation, it is exempted from the coverage of KAAD and, as a result, the issue presented to the trial court was whether KCCR had jurisdiction to proceed through the administrative process. Based upon our decision in *R. D. Andersen*, we hold that the trial court had jurisdiction to hear and rule on the Church's petition for declaratory judgment and injunctive relief.

## DOES KAAD APPLY TO SECTARIAN CORPORATIONS?

In ruling in favor of the Church, the trial court in the present matter held that KCCR had no jurisdiction over a sectarian corporation. KCCR argues that, even assuming the trial court had jurisdiction to determine the issues involved, it erred in its determination that KCCR had no jurisdiction over the Church.

KCCR argues that the legislature intended for sectarian organizations to be subject to the provisions of KAAD. It additionally contends that, in this case, the child care program does not serve any religious purpose and that it should at least have jurisdiction over that aspect of the Church's operation.

K.S.A. 44-1009(a) provides:

"(a) It shall be an unlawful employment practice:

"(1) For an employer, because of the race, religion, color, sex, physical handicap, national origin or ancestry of any person to refuse to hire or employ, or to bar or to discharge from employment such person or to otherwise discriminate against such person in compensation or in terms, conditions, or privileges of employment; or to limit, segregate, separate, classify or make any distinction in regards to employees; or to follow any employment procedure or practice which, in fact, results in discrimination, segregation or separation without a valid business motive."

It would seem to follow that, if the Church is an employer within the purview of KAAD, then it would be subject to the proceedings of KCCR. In order to determine this issue, we must construe K.S.A. 44-1002(b), which defines employer as:

"(b) The term 'employer' includes any person in this state employing four (4) or more persons, and any person acting directly or indirectly for an employer as herein defined, and labor organizations, *nonsectarian corporations*, and organizations engaged in social service work, and the state of Kansas and all political and municipal subdivisions thereof, but shall not include a non-profit fraternal or social association or corporation." (Emphasis added.)

The statute clearly covers nonsectarian corporations as employers within the purview of KAAD. In the instant matter, the Church is a sectarian corporation, and the question is whether a sectarian corporation is included within the definition of "employer" cited above. This question has been decided, and this case is controlled by the decision of *Van Scoyk v. St. Mary's Assumption Parochial School*, 224 Kan. 304, 580 P.2d 1315 (1978). In that case, two Protestant teachers at a Catholic school operated by St. Mary's Church were released and no reason was given for their termination. The two aggrieved former teachers filed suit, claiming that St. Mary's was guilty of religious discrimination. St. Mary's countered by arguing that it was exempt from the provisions of KAAD because it was a sectarian corporation.

The Kansas Supreme Court held in favor of the position taken by St. Mary's and stated that the definition of employer in the statute did not include sectarian employers:

"K.S.A. 1977 Supp. 44-1002(b) defines 'employer' as follows:

" 'The term "employer" includes any person in this state employing four (4) or more persons, and any person acting directly or indirectly for an employer as herein defined, and labor organizations, *nonsectarian* corporations, and organizations engaged in social service work, and the state of Kansas and all political and municipal subdivisions thereof, but shall not

include a non-profit fraternal or social association or corporation.' (Emphasis supplied.)

"By specifying and including nonsectarian corporations under the act, the legislature obviously intended to exclude *sectarian* employers." 224 Kan. at 307.

We are unable to distinguish the current case from *Van Scoyk*. *Van Scoyk* is clearly on point and is controlling. Based on the law of *Van Scoyk*, the Church is exempt from the provisions of KAAD, and the trial court did not err in reaching that conclusion.

KCCR argues that *Van Scoyk* is ambiguous and that the opinion is "cryptic," out of date, and unreliable. It further asserts that the decision is out of line with the law of other jurisdictions and that it should strictly be limited to its facts. We do not agree.

The decision in *Van Scoyk* is neither ambiguous or cryptic. It very clearly and precisely interprets K.S.A. 44-1002(b) and holds that it does not include sectarian employers. This court is required to apply the law established by the decisions of our Supreme Court, absent some indication that the court is departing from its previously expressed position. *Mercer v. Fritts*, 9 Kan. App. 2d 232, 235, 676 P.2d 150, *aff'd* 236 Kan. 73, 689 P.2d 774 (1984). We have no reason to suspect that our Supreme Court has any intention of departing from its decision in *Van Scoyk*. Further, we agree with that decision and hold that it controls our decision in the present matter.

We further note that *Van Scoyk* was decided in 1978. The legislature is presumably well acquainted with the opinion and with its ramifications. Since 1978, the legislature has met a number of times and has, on several occasions, amended KAAD. Despite the opportunity to do so, the legislature has not seen fit to enact legislation which would nullify or alter the decision in *Van Scoyk*. We consider this inaction by the legislature to be significant and indicative of legislative satisfaction with the definition of "employer" adopted by *Van Scoyk*. In our judgment, if KCCR wants to include sectarian corporations within its jurisdictional grasp, it should seek appropriate action by the legislature.

Finally, KCCR argues that, while the Church may be a sectarian corporation, its child care program is somehow separable and not sectarian. We consider this argument untenable for a

number of reasons. First of all, this argument was not presented to the trial court. We have examined the record and can find nothing in the record to indicate that this argument was ever presented to the trial court. The law is clear that a point not raised before the trial court cannot be considered for the first time on appeal. *Kansas Dept. of Revenue v. Coca Cola Co.,* 240 Kan. 548, 552, 731 P.2d 273 (1987). Further, if the record fails to show that an issue was raised before the trial court, this court is precluded from considering that issue on appeal. See *State v. Trotter,* 245 Kan. 657, Syl. ¶ 1, 783 P.2d 1271 (1989).

There was apparently no testimony, and there is nothing in the record to indicate, that the child care program operated by the Church was anything other than sectarian in nature. We believe it is reasonable to conclude that, if the purpose of the Church is to honor and carry out the will of God; to carry on religious, educational, and missionary work; and to manifest the unity of the congregation's faith in Jesus Christ as God and Savior, the child care program run by the Church will attempt to meet those goals. These purposes are all clearly set forth in the Church's articles of incorporation and in its constitution.

There is simply no evidence in the record to indicate that the child care program can be separated from the other operations of the sectarian corporation which is known as the Zion Lutheran Church. The record does not support, in any manner, the contention of KCCR in this regard. Because it is the duty of the appellant to designate an adequate record to support its contentions, the failure of KCCR to do so requires this court to presume that the findings of the trial court are correct. See *Plummer Development, Inc. v. Prairie State Bank,* 248 Kan. 664, 671, 809 P.2d 1216 (1991); *State v. Gonzales,* 245 Kan. 691, 699, 783 P.2d 1239 (1989).

Affirmed.