199 P.3d 781 (2009)
Amir M. FRIEDMAN, M.D., Appellant,
v.
The KANSAS STATE BOARD OF HEALING ARTS, Appellee.
No. 100,564.
Supreme Court of Kansas.
January 16, 2009.
*783 Virginia M. Friedman, of Swedesboro, New Jersey, argued the cause and was on the briefs for the appellant.
Wm. Scott Hesse, assistant attorney general, argued the cause, and Diane L. Bellquist, of Kansas State Board of Healing Arts, was on the brief for the appellee.
The opinion of the court was delivered by JOHNSON, J.:
Amir Friedman, M.D., appeals the district court's rulings on his petition challenging the Kansas Board of Healing Arts' (Board) jurisdiction to initiate a disciplinary proceeding against his Kansas medical license. Friedman claims that the Board did not have subject matter jurisdiction because his medical license had expired when the disciplinary action was filed. The district court dismissed Friedman's attempted judicial review of agency action because he had not exhausted his administrative remedies, and found that Friedman had failed to show irreparable harm so as to merit an injunction. The Supreme Court transferred the case on its own motion.
In April 1999, the Board issued Friedman a license to practice medicine and surgery in the State of Kansas. That license remained active until March 6, 2006, when the Board granted Friedman's request to change his license designation to inactive.
Medical licenses must be renewed by June 30 of each year by filling out a renewal form and paying an annual registration fee. See K.S.A.2007 Supp. 65-2809(a); K.A.R. 100-15-1. Friedman did not file a renewal form or pay the annual fee. Accordingly, his license expired on June 30, 2006. Pursuant to K.S.A.2007 Supp. 65-2809(d), Friedman had 30 days after the June 30 expiration to effect the renewal or his medical license would automatically be canceled. Friedman did not effect the renewal, because he had moved his residence and medical practice to New Jersey.
On July 31, 2006, the Board filed a formal petition against Friedman in a disciplinary action, alleging three counts of unprofessional conduct, one count of falsifying a medical record, and one count of surrendering hospital medical privileges while under hospital investigation. On December 26, 2007, Friedman filed a motion to dismiss the disciplinary action, alleging that the Board did not have subject matter jurisdiction because his license was expired when the action was commenced. On January 29, 2008, an administrative law judge issued an order which, inter alia, denied Friedman's motion to dismiss.
Instead of appealing the administrative law judge's decision to the Board pursuant to K.S.A.2007 Supp. 77-527, Friedman filed a "Petition for Judicial Review, for Temporary Injunctive Relief and Permanent Injunctive Relief" in Shawnee County District Court. The Board subsequently filed a motion to dismiss, claiming that the district court did not have jurisdiction to consider the petition because Friedman had not exhausted his available remedies, as required by the KJRA, and further alleging that the Board has subject matter jurisdiction to initiate a disciplinary action against a licensee with an expired license.
The district court agreed that Friedman's petition for judicial review of the agency action was filed without having exhausted the administrative remedies and therefore should be dismissed. The court further found that, to the extent the petition asserted an independent action for an injunction, it should be denied because the Board did have jurisdiction to take action on Friedman's medical license on July 31, 2006, which was the last day on which Friedman could renew his license before it was automatically cancelled.
In appealing the district court's rulings, Friedman makes two claims: (1) Under Kansas *784 law, the Board does not have jurisdiction over a physician whose license has expired unless that physician is then practicing medicine unlawfully; and (2) in Kansas, the exhaustion of administrative remedies is not a prerequisite for judicial review of an administrative agency's interlocutory order concerning the agency's jurisdiction. We take the liberty of commencing with the second claim, given that the outcome will impact whether we can review the merits of the first claim.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

Petition for Judicial Review
The determination of a district court's jurisdiction to consider a petition for judicial review of an agency's action is a question of law over which this court has unlimited review. Back-Wenzel v. Williams, 279 Kan. 346, 347, 109 P.3d 1194 (2005). Subject matter jurisdiction is vested by statute and establishes the court's authority to hear and decide a particular type of action. Pieren-Abbott v. Kansas Dept. of Revenue, 279 Kan. 83, 92, 106 P.3d 492 (2005). Accordingly, the interpretation of a statute is also subject to de novo review. Griffin v. Suzuki Motor Corp., 280 Kan. 447, 451, 124 P.3d 57 (2005).
Parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel; a failure to object to the court's jurisdiction does not invest the court with the requisite subject matter jurisdiction. See Kansas Bd. of Regents v. Skinner, 267 Kan. 808, Syl. ¶ 5, 987 P.2d 1096 (1999). Moreover, if the district court lacks jurisdiction to make a ruling, an appellate court does not acquire jurisdiction over the subject matter on appeal. State v. McCoin, 278 Kan. 465, 468, 101 P.3d 1204 (2004).
The Board derives its authority to regulate the medical profession from the Kansas Healing Arts Act, K.S.A. 65-2801 et seq. That act specifically provides that "[j]udicial review and civil enforcement of any agency action under [the Healing Arts Act] shall be in accordance with" the KJRA. K.S.A. 65-2851a(b). Under the KJRA, a prerequisite to filing a petition for judicial review is the exhaustion of "all administrative remedies available within the agency." K.S.A. 77-612; see K.S.A. 77-607(a).
Friedman does not contend that he exhausted his administrative remedies, but rather he argues that a person may petition for review of jurisdictional questions at any time, i.e., that the KJRA exhaustion requirement does not apply to his claim. He relies in part on decisions rendered prior to the 1984 adoption of the KJRA, L.1984, ch. 338. See, e.g., Butler v. Rude, 162 Kan. 588, 178 P.2d 261 (1947); R.D. Andersen Constr. Co. v. Kansas Dept. of Human Resources, 7 Kan.App.2d 453, 643 P.2d 1142, rev. denied 231 Kan. 801 (1982). Similarly, Friedman's reliance on Zion Lutheran Church v. Kansas Comm'n on Civil Rights, 16 Kan.App.2d 237, 821 P.2d 334 (1991), aff'd 251 Kan. 206, 830 P.2d 536 (1992), is unpersuasive, given that opinion's failure to cite to or apply the explicit provisions of the KJRA. See Midwest Crane & Rigging, Inc. v. Kansas Corporation Comm'n, 38 Kan.App.2d 269, 272-73, 163 P.3d 1244 (2007) (attempting to explain Zion as an anomaly under the KJRA).
The order containing the ALJ's ruling on the jurisdictional challenge also discusses future procedures, such as subpoenas and discovery timelines; it does not purport to make any substantive determination of the disciplinary complaint. The ALJ's ruling was not a final agency action, but rather it was intended "to be preliminary, preparatory, procedural or intermediate with regard to subsequent agency action." K.S.A. 77-607(b)(2). In other words, it was a nonfinal agency action.
Accordingly, under the plain statutory language of the KJRA, Friedman was
"entitled to interlocutory review of nonfinal agency action only if:
"(a) It appears likely that the person will qualify under K.S.A. 77-607 for judicial review of the related final agency action; and
"(b) postponement of judicial review would result in an inadequate remedy or irreparable harm disproportionate to the public benefit derived from postponement." K.S.A. 77-608.
*785 Obviously, Friedman would likely qualify for a review of the final agency action on the jurisdiction question. Therefore, Friedman's entitlement to interlocutory review hinges on the second prong, i.e., whether postponement would result in an inadequate remedy or irreparable harm.
The exhaustion of administrative remedies requirement was part of our jurisprudence, prior to the adoption of the KJRA. In Jarvis v. Kansas Commission on Civil Rights, 215 Kan. 902, 904-05, 528 P.2d 1232 (1974), this court explained part of the public benefit in postponing judicial review:
"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. A primary purpose of the doctrine is the avoidance of premature interruption of the administrative process. It is normally desirable to let the administrative agency develop the necessary factual background upon which its decisions are based. Since agency decisions are frequently of a discretionary nature, or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. It is more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages. The very same reasons lie behind judicial rules sharply limiting interlocutory appeals. Frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures. [Citations omitted.]"
The KJRA codified the exhaustion of remedies requirement and, arguably, reduced the court's discretion to circumvent its employment by setting forth very limited, statutorily defined exceptions. Nevertheless, the public benefit in postponing judicial review until administrative remedies have been exhausted survives the enactment of the KJRA. See Dean v. State, 250 Kan. 417, 421, 826 P.2d 1372, cert. denied 504 U.S. 973, 112 S.Ct. 2941, 119 L.Ed.2d 566 (1992) (interpretation of a statute is a necessary and inherent function of an agency in its administration or application of that statute).
In his appellate brief, Friedman argues that postponement of judicial review would result in an inadequate remedy disproportionate to the public benefit because Friedman was not practicing in Kansas, nor had he applied for renewal of his Kansas license. He does not explain why the Board's ruling on the jurisdiction question would not be an adequate remedy. Indeed, if the Board were to have ruled that it did not have jurisdiction, Friedman would have obtained the exact remedy that he sought from the district court. Further, Friedman appears to misconstrue the public benefit that is being balanced against adequacy of remedy and degree of harm; K.S.A. 77-608 is referring to the public benefit in postponing judicial review and not the public benefit associated with supervising Kansas medical licenses.
Moreover, the fact that Friedman was continuing to practice medicine in New Jersey during the pendency of these proceedings would refute any contention that a postponement of judicial review concerning the jurisdiction of the Board would effect an irreparable harm upon Friedman. Pointedly, Friedman describes no harm that he has suffered other than the normal and usual inconvenience associated with such proceedings. In other words, he fails to establish the prerequisite set forth in K.S.A. 77-608(b).
Friedman also appears to suggest that the question of an agency's subject matter jurisdiction is best decided in the first instance by the courts, as a matter of judicial economy. However, we have specifically rejected the notion that a party may circumvent the KJRA's exhaustion requirement by claiming that an issue of statutory construction may be more authoritatively determined by the district court. Dean, 250 Kan. at 422-23, 826 P.2d 1372.
To summarize, we find that Friedman attempted to obtain an interlocutory review of a nonfinal agency action without establishing his entitlement to do so under K.S.A. 77-608(b). Therefore, the district court correctly dismissed the attempted judicial review because of Friedman's failure to obtain a *786 final order of the Board on the jurisdiction question, i.e., for a failure to exhaust administrative remedies. Because the district court did not have jurisdiction to consider the merits of the attempted judicial review, this court also lacks jurisdiction to do so. The dismissal of the petition is affirmed.

Petition for Injunction
The district court reached the merits of Friedman's jurisdiction challenge, only to the extent that the petition might be construed as an independent action for an injunction. However, the dictates of the KJRA cannot be bypassed simply by labeling the petition as one for an injunction. The relief Friedman sought through an "injunction" was a court order reversing the ALJ's ruling that the Board had jurisdiction to bring the disciplinary action, i.e., to obtain a judicial review of the nonfinal agency action.
The KJRA "establishes the exclusive means of judicial review of agency action." K.S.A. 77-606. As this court explained in Heiland v. Dunnick, 270 Kan. 663, 668, 19 P.3d 103 (2001):
"The KJRA applies to all agencies and all proceedings for judicial review and civil enforcement of agency actions not specifically exempted by statute. K.S.A. 77-603(a). It establishes the exclusive means of judicial review of agency action. K.S.A. 77-606; Lindenman v. Umscheid, 255 Kan. 610, 619, 875 P.2d 964 (1994). `The KJRA is the exclusive remedy for all requested relief which an agency can grant under its authority. Only actionable claims which fall outside the authority of an agency to grant can support a separate action by an aggrieved party.' Douglass v. Kansas State University, 22 Kan.App.2d 171, 174, 915 P.2d 782 (1996)."
Here, the Board had authority to grant the relief that Friedman sought. See K.S.A. 77-622. Therefore, a request for that relief must be construed as a petition for judicial review subject to the KJRA, notwithstanding the attempt to label it as a separate action. See Schall v. Wichita State University, 269 Kan. 456, 482, 7 P.3d 1144 (2000). Accordingly, the district court should have dismissed the petition in its entirety.
Appeal dismissed.
McFARLAND, C.J. and DAVIS, J., not participating.
HILL, J., and LARSON, S.J., assigned.[1]
NOTES
[1] REPORTER'S NOTE: Judge Stephen D. Hill, of the Kansas Court of Appeals, was appointed to hear case No. 100,564 vice Chief Justice McFarland, pursuant to the authority vested in the Supreme Court by K.S.A. 20-3002(c). Senior Judge Edward Larson was appointed to hear the same case vice Justice Davis pursuant to the authority vested in the Supreme Court by K.S.A. 20-2616.