FILED
United States Court of Appeals
Tenth Circuit

October 5, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UTILITY TRAILER SALES OF
KANSAS CITY, INC.,

      Plaintiff-Appellant,

v.

MAC TRAILER MANUFACTURING,
INC.; SUMMIT TRUCK
EQUIPMENT, LLC,

      Defendants-Appellees.

No. 10-3236
(D.C. No. 2:09-CV-02023-JPO)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **ANDERSON**, and **HARTZ**, Circuit Judges.

---

Utility Trailer Sales of Kansas City, Inc., persuaded a jury that MAC

Trailer Manufacturing, Inc. and Summit Truck Equipment, LLC tortiously

interfered with Utility's prospective business advantage or relationship. But the

jury rejected Utility's claims of breach of contract and tortious interference with

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

contract, and also found that the contract between Utility and MAC was not a franchise agreement as that term is defined in the Kansas Dealers and Manufacturers Licensing Act (KDMLA), Kan. Stat. Ann. §§ 8-2401 to 8-2444. After post-trial briefing, the district court concluded that, with regard to the claim of tortious interference with prospective business advantage, MAC and Summit were entitled to judgment as a matter of law because Utility had failed to show that their conduct was not protected by the business competitor privilege. The court also concluded that it lacked jurisdiction to hear Utility's KDMLA claim because Utility had not exhausted its administrative remedies before approaching the court. Thus, it set aside the jury verdict in favor of Utility on the tortious-inteference claim and dismissed the KDMLA claim.

Utility now appeals the district court's post-trial rulings in favor of defendants. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

### *Background*

MAC manufactures trailers; Utility sells and services them. In November 2000, Utility and MAC entered into a Dealer Agreement. This contract stated that Utility would "be the only dealer authorized or licensed by MAC within the [Kansas City] area." Aplt. App., Vol. III at 803. It also explicitly provided, however, that neither MAC nor any other MAC dealer was prohibited from selling trailers to customers in the Kansas City area. The Dealer Agreement was terminable by either party with thirty days' notice.

-2-

In late 2007, MAC contacted Transwest Trailers LLC, a trailer dealer located in Colorado, about becoming an authorized MAC dealer. Transwest completed a dealer application and, in early 2008, MAC and Transwest circulated a draft Distributor Selling Agreement. The agreement, which Transwest executed, contemplated that Transwest's dealership area would include the area previously reserved to Utility. In April 2008, MAC terminated Utility's Dealer Agreement, effective immediately. After Utility filed a complaint under the KDMLA with the Kansas Director of Vehicles, MAC revoked its termination of the Dealer Agreement. MAC then declined to execute Transwest's Distributor Selling Agreement. Nevertheless, Transwest remained an authorized MAC dealer.

Summit is a sister company of Transwest that has an office in Kansas City, Missouri. It was Utility's theory at trial that after the MAC-Transwest Distributor Selling Agreement fell through, MAC, Transwest, and Summit agreed that Summit would operate a de facto Kansas City MAC dealership by selling MAC trailers that Summit would obtain through Transwest. Summit sold at least one MAC trailer within Utility's dealership area.

Utility filed suit against MAC and Summit in Kansas state court in December 2008, alleging breach of contract, tortious interference with contract, and tortious interference with a prospective business advantage or relationship. The defendants removed the case to the federal district court. Utility continued to

sell MAC trailers under the Dealer Agreement.  By letter dated October 30, 2009, however, MAC gave Utility thirty days' notice of the termination of the Dealer Agreement.  In response to the October 30 letter, Utility moved to file a second amended complaint, which would add a claim that the termination of the Dealer Agreement was in violation of the KDMLA.  The court allowed the filing of the second amended complaint.

Utility's claims went to trial before a jury.  The jury found in favor of Utility on its claim of tortious interference with a prospective business advantage and awarded damages of $87,500 against MAC and $37,500 against Summit.  As described above, the jury found in favor of MAC on Utility's contract claim and in favor of Summit on Utility's claim of tortious interference with contract, and also found that the Dealer Agreement was not a franchise agreement as defined by the KDMLA.

MAC and Summit filed a renewed motion for judgment as a matter of law on the claim for tortious interference with a prospective business advantage, and Utility filed a motion for judgment as a matter or law or for a new trial on its KDMLA claim.  The district court granted MAC and Summit's motion.  It concluded that Utility had failed to present sufficient evidence that defendants' actions were not protected under the business competitor privilege; specifically, that Utility failed to show that MAC and Summit employed "wrongful means" when competing with Utility, as required to overcome the privilege.  The court

then denied Utility's motion because Utility had failed to file a complaint with the Kansas Director of Vehicles after it received MAC's second termination letter. Therefore, the court concluded, Utility had failed to exhaust the administrative remedies provided by the KDMLA and the court was without jurisdiction to hear the KDMLA claim.

*Analysis*

"Because this is a diversity case, we apply the substantive law of the forum state." *DP-Tek, Inc. v. AT & T Global Info. Solutions Co.*, 100 F.3d 828, 831 (10th Cir. 1996). "In the absence of authoritative precedent from the Kansas Supreme Court, however, our job is to predict how that court would rule." *Id.* (quotation omitted).

## I.     Tortious Interference Claim

The district court held that Utility had not presented sufficient evidence that defendants employed "wrongful means" when competing with Utility, and thus Utility failed to overcome the business competitor privilege. Accordingly, the court granted judgment as a matter of law to MAC and Summit on Utility's claim for tortious interference with a prospective business advantage. Utility argues the district court erred because (1) the defendants did not timely assert the business competitor privilege; (2) the business competitor privilege is not applicable in the circumstances of this case; and (3) Utility presented sufficient evidence that MAC and Summit used "wrongful means" in competing with it.

We review de novo the grant of a motion for judgment as a matter of law. *Dillon v. Mountain Coal Co., L.L.C.*, 569 F.3d 1215, 1219 (10th Cir. 2009). "Judgment as a matter of law is appropriate when a 'party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Id.* (quoting Fed. R. Civ. P. 50(a)(1)). "A party is entitled to judgment as a matter of law only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 797 (10th Cir. 2007) (quotation omitted).

## A. Timely Assertion

Utility first argues that the district court erred in concluding that MAC and Summit timely asserted the business competitor privilege. The district court held that the privilege was encompassed in defendants' assertion in the pretrial order that their conduct was "legally justified." Aplt. App., Vol. I at 86-87. With regard to this aspect of the tortious-interference arguments, our review is for abuse of discretion. *See Tyler v. City of Manhattan*, 118 F.3d 1400, 1403 (10th Cir. 1997) ("Because the district court is in the best position to interpret its pretrial order, our standard of review on appeal is abuse of discretion.").

Even assuming that MAC and Summit were required to assert the privilege,[1] the district court did not abuse its discretion in concluding that the privilege came under the term "legally justified." As the court noted, the Kansas Supreme Court has stated, "in the area of interference with prospective contractual relations the terminology of privilege, proper vs. improper, and justification are used interchangeably with no overwhelming preference for any term." *Turner v. Halliburton Co.*, 722 P.2d 1106, 1116 (Kan. 1986). Therefore, the court was not arbitrary, capricious, whimsical or manifestly unreasonable in interpreting "legally justified" to encompass the business competitor privilege. *See Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) ("A district court abuses its discretion if its decision is arbitrary, capricious, whimsical, or manifestly unreasonable." (quotation omitted)).

## B.    Applicability of Business Competitor Privilege

Next, Utility asserts that the business competitor privilege is inapplicable to this case as a matter of law. It contends that: (1) no Kansas appellate court has adopted the privilege; and (2) the privilege is not applicable to these circumstances, "in which the parties have contractually obligated themselves and agreed that no other dealer will have a location within the exclusive territory set by the contract." Aplt. Opening Br. at 31.

---

[1]    It is the plaintiff's burden to show the defendant's conduct was not privileged, not the defendant's burden to show its conduct was privileged. *See DP-Tek*, 100 F.3d at 836.

-7-

We quickly dispose of the first argument. In *DP-Tek*, 100 F.3d at 832-33, this court predicted that the Kansas Supreme Court would adopt the business competitor privilege. No Kansas appellate decision has contradicted or undermined *DP-Tek*, and in the absence of intervening precedent, we are bound by this court's prior interpretation. *See Stauth v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 236 F.3d 1260, 1267 (10th Cir. 2001) ("[A]ny panel of this Court [must] follow an earlier panel's interpretation of state law, absent a supervening declaration to the contrary by that state's courts or an intervening change in the state law.").

With regard to its second argument, Utility argues that "when the parties have contracted to limit or restrict trade, or know of such restrictions, they have no basis to later claim privilege for a blatant and willful violation of the exclusive dealership area provision of the contract through sham arrangements, misrepresentations, and other intentional conduct." Aplt. Opening Br. at 31. It is true that the question of whether interference is improper "depends on a judgment and choice of values in each situation." *Restatement (Second) of Torts* § 767 cmt. b; *see also Turner*, 722 P.2d at 1116 ("The issue raised on a plea of justification has been said to depend on the circumstances of the particular case . . . ." (quotation omitted)). In this case, however, it is not clear that all competitive conduct would violate the Dealer Agreement. That agreement provided that "[n]othing contained in this Agreement shall be deemed by the

parties to in any way restrict MAC, or any other MAC Dealer, from selling MAC products at any time or in any place to any person." Aplt. App., Vol. III at 804. Because this provision leaves room for at least some competition, it therefore also leaves room for asserting the business competitor privilege. *See Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 623 (10th Cir. 1995) (stating, in predicting Colorado law, that "[t]he competitor's privilege set out in section 768(1) applies when the parties compete *in any way*").

## C. Sufficiency of the Evidence

Finally, Utility argues that it presented sufficient evidence for a jury to conclude that MAC and Summit used "wrongful means" in competing with Utility. The district court disagreed, concluding that this court has required a showing of "independently actionable conduct" to establish "wrongful means" and that none of Utility's evidence constituted "independently actionable conduct." Aplt. App., Vol. I at 391-94.

The "wrongful means" requirement arises from the *Restatement (Second) of Torts* § 768(1), which establishes the elements of the business competitor privilege for interference with prospective contractual advantage. In *DP-Tek*, this court held that with regard to a claim of interference with a prospective relation, the Kansas Supreme Court would likely conclude that "wrongful means requires independently actionable conduct." 100 F.3d at 833. "'[W]rongful means' refers to conduct *such as* physical violence, fraud, civil suits, and criminal

prosecutions." *Id.* (quotation omitted); *see also Restatement (Second) of Torts* § 768 cmt. e ("The predatory means discussed in [*Restatement*] § 767, Comment *c*, physical violence, fraud, civil suits and criminal prosecutions, are all wrongful in the situation covered by this Section."). *DP-Tek* also held that it is the plaintiff's burden to show that the defendant's conduct was not privileged. 100 F.3d at 836. Thus, the district court did not err in concluding that, to succeed with its claim for tortious inference with prospective business advantage, Utility must show independently actionable conduct to establish that defendants used wrongful means in competing with it.

Utility summarizes the evidence in its favor and argues that defendants' "patently transparent attempt to make an end [run] around the exclusive dealership rights of [Utility]" establishes independently actionable conduct. Aplt. Opening Br. at 37. According to the jury, defendants' actions did not constitute breach of contract or tortious inference with contract. Thus, for Utility to prevail, there must be some other actionable conduct. But with the exception of its fraud argument discussed below,[2] Utility fails to explain *how* defendants'

---

[2]    Utility's opening brief states that "it was [Utility's] position below that the Defendants' acts and omissions were in violation of the [KDMLA]." Aplt. Opening Br. at 38. Perhaps this reference was intended to suggest that a violation of the KDMLA constitutes independently actionable conduct. For two reasons, however, we decline to consider this position. First, this one-sentence assertion does not constitute adequate appellate briefing. *See MacArthur v. San Juan County*, 495 F.3d 1157, 1160-61 (10th Cir. 2007) ("[M]ere conclusory allegations with no citations to the record or any legal authority for support does not

(continued...)

actions in evading the exclusive-dealership provisions are otherwise actionable. It is insufficient to simply describe the circumstances and then conclude that defendants' actions were wrongful and independently actionable.

Utility does suggest that defendants' conduct was independently actionable as fraud. It does not appear, however, that Utility made this argument before the district court. Utility's response to defendants' renewed motion for judgment as a matter of law discussed Utility's "end run" theory of wrongful means, but it did not explain how the evidence established fraud. Utility asserts in a footnote in its opening brief that its "factual presentation of the case" established that "[f]raud was at the heart of the actions of Summit and MAC," Aplt. Opening Br. at 40 n.2, but it fails to identify (either in its opening brief or reply brief) where in the district court it argued what it does here – that the evidence of fraud satisfied the requirement of independently actionable conduct. And in its order, the district court noted that Utility "fail[ed] to address the 'independently actionable conduct' standard required to establish wrongful means. Utility Trailer does not explain

---

[2](...continued)
constitute adequate briefing." (quotation omitted)). Second, even though in the district court Utility argued that there was a violation of the KDMLA, it does not appear that Utility tried to make any connection between the KDMLA and independently actionable conduct. Arguments made for first time on appeal generally are waived. *See Tele-Commc'ns, Inc. v. C.I.R.*, 104 F.3d 1229, 1233 (10th Cir. 1997) ("[W]e should not be considered a 'second shot' forum, a forum where secondary, back-up theories may be mounted for the first time.").

how or why any of the above-listed conduct of defendants could form the basis of independent liability." Aplt. App., Vol. I at 393.

Our general rule is to decline to hear arguments raised for the first time on appeal. *See, e.g., Turner v. Pub. Serv. Co.*, 563 F.3d 1136, 1143 (10th Cir. 2009) ("Turner may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory, even if the new theory falls under the same general category as an argument presented as trial." (quotation omitted)). Because Utility offers, and we see, no reason to depart from the general rule in this instance, we decline to consider whether the evidence sufficiently establishes fraud.

## II.    KDMLA Claim

The district court denied Utility's motion for judgment as a matter of law or a new trial on its KDMLA claim and dismissed that claim because Utility had not exhausted its administrative remedies. Utility presents three challenges to this conclusion: (1) the KDMLA itself does not require an aggrieved party to engage in the KDMLA's complaint process, and the Kansas courts have not interpreted it in that manner; (2) the administrative tribunal (the Kansas Director of Vehicles) has explicit authority only to grant injunctive relief, and statutory damages do not lie in its exclusive jurisdiction; and (3) the pendency of the federal action and the interests of judicial economy and efficiency justified Utility in not filing an administrative complaint in this instance.

Our review is de novo for all aspects of the motion. Denials of judgment as a matter of law are reviewed de novo. *See Aquilino v. Univ. of Kan.*, 268 F.3d 930, 933 (10th Cir. 2001). And although denials of new-trial motions generally are reviewed for abuse of discretion, where the decision turns on an issue of law (as in this case), our review is de novo. *See Weese v. Schukman*, 98 F.3d 542, 549 (10th Cir. 1996); *see also Cent. Kan. Credit Union v. Mut. Guar. Corp.*, 102 F.3d 1097, 1104 (10th Cir. 1996) (applying de novo review to interpretation of state statutes).

Kan. Stat. Ann. § 8-2414 addresses the cancellation of franchise agreements between dealers and manufacturers or distributors. In subsection (b), it provides that:

> A vehicle dealer . . . may file a complaint with the director [of vehicles] against a first or second stage manufacturer or distributor challenging the reasons and causes given for the proposed cancellation . . . . Upon a complaint being filed, the director shall promptly set the matter for public hearing . . . for the purpose of determining whether there has been a violation of [Kan. Stat. Ann. §] 8-2410 . . . or whether good cause exists for cancellation, termination or nonrenewal of the franchise agreement in accordance with the dealers and manufacturers licensing act.

Kan. Stat. Ann. § 8-2414(b). The next subsection continues:

> The franchise agreement shall remain in full force and effect pending the determination by the director of the issues involved as provided by this act. If the director determines that the first or second stage manufacturer or distributor is acting in violation of this act or that good cause does not exist for the proposed action, the director shall order for the franchise agreement to be kept in full force and effect.

-13-

*Id.* § 8-2414(c). Subsection (d) places the burden of proof "on the first or second stage manufacturer or distributor to show by a preponderance of the evidence that it did not act arbitrarily or unreasonably and that good cause did exist for the proposed cancellation, termination or nonrenewal of the franchise agreement."
*Id.* § 8-2414(d). This subsection further empowers the Director of Vehicles to

> order that the franchise agreement may be cancelled, terminated or not renewed if the director finds, after a hearing, that the licensed vehicle dealer is acting in violation of this act or that the judgment of the first or second stage manufacturer or distributor is with good cause and the vehicle dealer's default is material.

*Id.* § 8-2414(d). After defining "good cause" in subsection (e), § 8-2414 provides for certain payments the manufacturer "shall pay" "[i]n event of cancellation, termination or nonrenewal of a franchise agreement." *Id.* § 8-2414(f).

"The exhaustion doctrine dictates that an administrative remedy be sought and completed before the courts will act." *Jarvis v. Kan. Comm'n on Civil Rights*, 528 P.2d 1232, 1235 (Kan. 1974). Accordingly, the Kansas Supreme Court "has consistently held that where an administrative remedy is provided by statute, such remedy ordinarily must be exhausted before a litigant may resort to the courts." *NEA-Coffeyville v. Unified Sch. Dist. No. 445*, 996 P.2d 821, 825 (Kan. 2000). "Because agency decisions are frequently of a discretionary nature or frequently require specific expertise, the agency should be given the first chance to exercise that discretion or to apply that specific expertise." *Id.*

-14-

"However, if no administrative remedy is available or if it is inadequate to address the problem at issue, exhaustion is not required." *Id.* A failure to exhaust an adequate and available administrative remedy precludes a judicial action. *See Sandlin v. Roche Labs., Inc.*, 991 P.2d 883, 889 (Kan. 1999); *Mattox v. Dep't of Transp.*, 747 P.2d 174, 176 (Kan. App. 1987).

Utility first argues that § 8-2414(b) is not mandatory. But it is immaterial that subsection (b) says a party "may" file an administrative complaint. *See Sandlin*, 991 P.2d at 886, 889 (dismissing for failure to exhaust, even though the statutes governing the complaint procedure said that a person "may file a complaint" and "may petition for reconsideration"); *Blomgren v. Kan. Dep't of Revenue*, 191 P.3d 320, 324 (Kan. App. 2008) (rejecting the argument that an administrative appeal is discretionary, even though the statute provided that a licensee "may appeal"). Further, while Utility asserts "[n]o Kansas appellate court has applied the exhaustion of administrative remedies rule to claims for damages for violations of the KDMLA," Aplt. Opening Br. at 45, we have not located any Kansas decision holding that the exhaustion doctrine does *not* apply to § 8-2414(b). It appears that the question simply has not yet arisen before the Kansas appellate courts. In the absence of contrary authority, we predict that the Kansas Supreme Court would hew to its general rule favoring exhaustion of administrative remedies.

-15-

As Utility also points out, the statute is silent as to who has authority to award statutory damages. As described above, however, the provisions outlining the administrative complaint procedure and the provision for statutory damages are all found in § 8-2414. The fact that the statutory damages directive is in the same section as the director-hearing procedure strongly suggests that the director may award statutory damages. Also, the section of the KDMLA expressly addressing the "jurisdiction of courts" in the first instance (as distinguished from courts undertaking judicial review pursuant to the Kansas Judicial Review Act) explicitly provides only for injunctive relief. Kan. Stat. Ann. § 8-2413(a). Combined with the placement of the statutory damages provision in § 8-2414, this indicates that the Kansas Supreme Court would be likely to hold that the director may be not only an *appropriate* authority to award statutory damages in the first instance, but also perhaps the *only* authority.

Moreover, even if the director does not have the authority to award statutory damages, that does not mean that the Kansas Supreme Court would excuse Utility from employing the statutory complaint procedure. The lack of statutory damages would not necessarily make the procedure inadequate. The Kansas Supreme Court has indicated that "plaintiffs should be permitted to seek court relief without first presenting the case to the administrative agency" only "[w]here there are *no issues raised* which lend themselves to administrative determination and the only issues present either require judicial determination or

-16-

are subject to judicial de novo review." *Zarda v. State*, 826 P.2d 1365, 1369

(Kan. 1992) (emphasis added). It also has recognized that:

> Since agency decisions are frequently of a discretionary nature, or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. . . . Frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

*Jarvis*, 528 P.2d at 1234. This case contains issues that would benefit from the

application of the agency's expertise, including the question, briefed by the

parties both before the district court and this court, of whether the Dealer

Agreement even qualifies as a "franchise agreement" under the KDMLA.

Finally, Utility argues that it should not be required to exhaust

administrative remedies because, in light of the already pending judicial action,

"it made sense for reasons of judicial economy to allow [Utility] to amend its

pleadings to include a claim for statutory damages under the KDMLA." Aplt.

Opening Br. at 46. Utility cites no legal authority in support of this theory,

however, and we have found no Kansas case applying a "judicial economy"

exception to the exhaustion doctrine. *Cf. Sandlin*, 991 P.2d at 889 (noting the

court "must protect the requirement of exhaustion" and dismissing where the

plaintiff cut short the administrative process to continue with court proceedings).

## *Conclusion*

The judgment of the district court is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge